# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| I.J., a minor, through his parent and legal guardian, J.J., individually and on behalf of all other persons similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>HEAP INC., now known as CONTENT SQUARE, INC.,<br><br>     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

I.J, a minor, through his parent and legal guardian, J.J., individually and on behalf of all other persons similarly situated, brings this action against Defendant Heap Inc., now known as Content Square, Inc. ("Defendant" or "Heap"), based upon personal knowledge of the facts pertaining to I.J. and on information and belief as to all other matters.

## NATURE OF THE ACTION

1. Every school day, millions of public-school students in the United States enter classrooms throughout the country. However, unlike the past, these students do not sit at their desks and open their schoolbooks for another day of learning. Schoolbooks have been replaced by laptops, tablets and other electronic devices. These devices are fueled by an industry that markets its products as "education technology" or "ed tech." While the benefits of such products are questionable, what is not, is the amount of data they gather about the schoolchildren that use them.

2.      The Federal Trade Commission ("FTC") has declared that "[c]hildren should not have to needlessly hand over their data and forfeit their privacy in order to do their schoolwork . . . especially given the wide and increasing adoption of [education technology] tools."[1]

3.      Yet, Defendant surreptitiously – and without consent – intercepted and collected students' confidential communications, including education records and school student records, while the students used education technology products offered by education technology providers PowerSchool Holdings LLC and Hobsons, Inc. (collectively, "PowerSchool"), in violation of federal and state statutes and common law.

4.      Defendant carried out its unlawful conduct in connection with an education technology product known as Naviance (hereinafter, the "Naviance platform" or "Naviance") – an online platform offered by PowerSchool that is, and has been, used by numerous schools throughout the United States, including schools operated by the Board of Education of the City of Chiago (the "Board"), which is Plaintiff I.J.'s school district.

5.      At relevant times, students enrolled in schools or school districts that contracted with PowerSchool for use of the Naviance platform were, and continue to be, provided with Naviance accounts through their respective schools or school districts.

6.      At relevant times, through online surveys, assessments and other mechanisms, the Naviance platform collected and obtained, and continues to collect and obtain, sensitive and confidential personal information about students, including education and school student records and the information contained therein.

---

[1] FTC, *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* (May 19, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy %20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20T echnology.pdf  (last accessed on Sept. 4, 2025).

7.    Unbeknownst to Plaintiff and members of the Nationwide Class and Subclasses (defined below and collectively referred to "Class Members,") and without their consent, Defendant unlawfully intercepted the confidential and sensitive communications of Plaintiff and Class Members while using the Naviance platform.

8.    Defendant's conduct as alleged herein constituted, and continues to constitute, an extreme invasion of Plaintiff's and Class Members' privacy in violation of their rights under federal and state statutes and common law. Given the secret and undisclosed nature of Defendant's conduct, additional evidence supporting Plaintiff's claims, including the full extent of Defendant's unlawful conduct, and the way in which the sensitive and confidential information and data was used, will be revealed in discovery.

## PARTIES

*Plaintiff I.J.*

9.    Plaintiff I.J. resides in Cook County, Illinois.

10.    At relevant times, Plaintiff I.J. was a student enrolled at various schools operated by the Board.

*Defendant Heap*

11.    Defendant Heap Inc., now known as Content Square, Inc., is a Delaware corporation, with its principal place of business in New York, New York. In 2023, Content Square, Inc. acquired Heap, Inc., which became a subsidiary of Content Square, Inc. In or about May 2025, Heap, Inc. was merged into Content Square, Inc.

12.    At relevant times, Heap Inc. was headquartered in San Francisco, California.

13.    Defendant is a software-as-a-service provider that offers its customers a data analytics platform that, among other things, automatically captures all of the data of its customers'

website users while those users access and navigate the websites ("Autocapture") – *i.e.*, "What they click. Where they go. What they do, even when you're not looking."

14.     At relevant times, Defendant, via Autocapture, subjected Plaintiff and Class Members to extreme invasions of their privacy.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under laws of the United States, namely, 18 U.S.C. § 2511.

15.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is a class action in which the aggregate amount in controversy for the proposed classes exceeds $5 million, and at least one member of the proposed nationwide class is a citizen of a state different from that of Defendant.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### *Personal Jurisdiction*

17.     This Court has personal jurisdiction over Defendant because it is at home in New York, New York – namely, its principal place of business is located in New York, New York.

### *Venue*

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and (d) because Defendant resides in this District and is subject to the Court's personal jurisdiction.

**OTHER RELEVANT ENTITIES**

*PowerSchool Holdings LLC*

19.     PowerSchool Holdings LLC holds itself out as the leading provider of cloud-based software to the kindergarten through twelfth-grade ("K-12") education market and serves more than ninety of the top 100 school districts by enrollment in the United States, including, at relevant times, the Board.

20.     Over 80% of all K-12 students in the United States and Canada use products provided by PowerSchool Holdings LLC, including Naviance.

21.     At relevant times, PowerSchool Holdings LLC embedded and integrated Defendant's data analytics platform and code into the Naviance platform resulting in, *inter alia*, Plaintiff and Class Members being otherwise subjected to extreme invasions of their privacy.

*Hobsons, Inc.*

14.     Prior to March 2021, Hobsons, Inc. operated and offered the Naviance platform to schools and school districts throughout the United States, including to the Board. In or about March 2021, PowerSchool Holdings LLC acquired all of the equity in Hobsons, Inc., and Hobsons, Inc. became a wholly-owned subsidiary of PowerSchool Holdings LLC.

15.     At relevant times, Hobsons, Inc. embedded and integrated Defendant's data analytics platform and code into the Naviance platform resulting in, *inter alia*, Plaintiff and Class Members being otherwise subjected to extreme invasions of their privacy.

*Board of Education of the City of Chicago*

16.     The Board is a school district within the State of Illinois that maintains a system of free schools within Chicago, Illinois, comprised of over 600 schools.

5

17. As of the start of the 2024-2025 school year, over 325,000 students were enrolled in schools operated by the Board.

## FACTUAL BACKGROUND

### *The Federal Educational Rights and Privacy Act*

18. The Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations govern the release of and access to "education records." *See* 20 U.S.C. § 1232(g); 34 C.F.R. Part 99.

19. Under the FERPA, "education records" are "those records, files, documents, and other materials which – (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

20. Under the regulations implementing the FERPA, "personally identifiable information" includes, but is not limited to: (a) the student's name; (b) the name of the student's parent or other family members; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number, student number, or biometric record; (e) other indirect identifiers such as the student's date of birth, place of birth, and mother's maiden name; (f) other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in a school community who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; and (g) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the educational record relates. 34 C.F.R. 99.3.

21.     Under the FERPA, an educational institution or agency may not disclose personally identifiable information from a student's education records without signed and dated written consent, subject to exceptions not applicable here. *See* 34 C.F.R. 99.30.

***The Illinois School Student Records Act***

22.     The Illinois Schools Student Records Act ("ISSRA"), 105 Ill. Comp. Stat. 10/1, *et seq.*, governs the release, transfer, disclosure and dissemination of school student records in Illinois. *See id.*

23.     Pursuant to the ISSRA, a "school" is, among other things, "any public preschool . . . kindergarten, nursery, elementary or secondary educational institution . . . , or any person, agency or institution which maintains school student records from more than one school . . . ." 105 Ill. Comp. Stat. 10/2(b).

24.     Pursuant to the ISSRA, "School Student Record" means "any writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction or by an employee of a school, regardless of how or where the information is stored." 105 Ill. Comp. Stat. 10/2(d).

25.     Pursuant to the ISSRA, "Student Permanent Record" means "the minimum personal information necessary to a school in the education of the student and contained in a school student record." 105 Ill. Comp. Stat. 10/2(e).

26.     Pursuant to the ISSRA, "Student Temporary Record" means "all information in a school student record but not contained in the student permanent record." 105 Ill. Comp. Stat. 10/2(f).

27.     Pursuant to the ISSRA, a "student" is "any person enrolled or previously enrolled in a school." 105 Ill. Comp. Stat. 10/2(a).

28.    Pursuant to the ISSRA, "[n]o school student records or information maintained therein may be released, transferred, disclosed or otherwise disseminated" unless certain exceptions not applicable here apply. 105 Ill. Comp. Stat. 10/6(a).

29.    Pursuant to the ISSRA, "[a]ny person aggrieved by a violation of [the ISSRA] may institute an action for injunctive relief . . . ." 105 Ill. Comp. Stat. 10/9(a).  Further, "any person injured by a wilful or negligent violation of [the ISSRA] may institute an action for damages . . . ." 105 Ill. Comp. Stat. 10/9(b).

30.    A willful violation of the ISSRA is a criminal offense. 105 Ill. Comp. Stat. 10/9(e).

*The Naviance Platform*

31.    According to Naviance marketing materials, Naviance is the "leading [College, Career and Life Readiness] platform equipping 10+ million students of all ages with skills to reach their postsecondary goals."

32.    Naviance, among other things: (a) "[p]rovide[s] students with tools to plan for a future that aligns with their strengths and interests"; (b) "[i]mplement[s] holistic counseling in a single platform where students, families, and staff can collaborate to build and track students' plans for future success"; and (c) "[e]nsure[s] every student has access to high-quality resources to achieve milestones toward their postsecondary goals."

33.    Prior to spring 2021, Hobsons, Inc. owned and operated the Naviance platform. In spring 2021, PowerSchool Holdings LLC acquired Hobsons, Inc. and the Naviance platform.

34.    Students attending schools or school districts that contracted with PowerSchool Holdings LLC or Hobsons, Inc., for use of the Naviance platform received and, if the contracts are active, continue to receive, access to the platform through their schools or school districts.

8

35.     A student enrolled in a school or school district that contracted with PowerSchool Holdings LLC or Hobsons, Inc. for use of the Naviance platform could access the platform through a login name uniquely affiliated with the student and a password.

36.     At times, the login name and password used by a student to access the Naviance platform were the same login name and password used by the student to log into the online network of the student's school or school district, as was the case for students attending schools operated by the Board ("Board Students"), including Plaintiff and Board Student Class Members.

37.     Through Naviance, PowerSchool obtained, and continues to obtain, data and information about students through assessments and surveys conducted within the Naviance platform. One such survey, titled the "Career Interest Profiler," purports to "help students discover the types of work activities and careers that match their interests . . . ."

38.     Other surveys and assessments students complete within the Naviance platform, include but are not limited to: (a) a "StrengthsExplorer Assessment; (b) a high school success assessment; (c) a "College Exploration Survey"; and (d) a "Postsecondary Pathway."

39.     The above-described surveys and assessments constitute education and school student records under the FERPA and the ISSRA, respectively. As such, their dissemination, transfer and disclosure are highly regulated and restricted.

40.     The Naviance platform also purports to use students' academic profiles and interests to help them explore and discover colleges that are a "fit" and help determine their future careers.

***The Board's Use of the Naviance Platform***

41.     The Board's stated "Mission" is to "provide a high-quality public education for every child . . . that prepares each for success in college, career, and civic life."

42.     The Board has a "Graduate Profile" setting forth its aspirations for its graduates. According to the Graduate Profile, "when students graduate from CPS, they possess the knowledge and skills to pursue their interests and achieve their postsecondary goals."

43.     At relevant times, the Board integrated the Naviance platform into the learning curriculum of Board Students in grades six through twelve to purportedly allow those students to "explore their interests and think about their futures" and to "support their postsecondary planning."

44.     At relevant times, use of the Naviance platform was a graduation requirement of the Board.

45.     The information, data and records input into, and created as a result of the use of, the Naviance platform by Board Students, including Plaintiff and Board Student Subclass Members, were of clear relevance to the students' education.

46.     In order for Board Students to log into their Naviance accounts – which were assigned to them by the Board – the students: (a) went to a login page within the Board's "cps.edu" web domain that displayed the Board's logo; and (b) used the same login names and passwords associated with their Board online accounts.

***Plaintiff's and Class Members' Reasonable Expectation of Privacy***

47.     As alleged in more detail below, Plaintiff and Class Members have, and had, a reasonable expectation of privacy in their education and school student records and the information contained therein, generally, as well as their communications within the Naviance platform, specifically.

10

*The Reasonable Expectation of Privacy in Education and Student School Records*

48.    At relevant times, students, including Plaintiff and Class Members, had, and continue to have, a reasonable expectation of privacy in their education and school student records and the information contained therein. Indeed, the records and information are highly regulated and restricted, and are deemed confidential by the FERPA and the ISSRA, among other laws.

*The Reasonable Expectation of Privacy in School and Online Activities*

49.    Underscoring Plaintiff's and Class Members' reasonable expectation of privacy in their education and school student records and the information contained therein, the FTC has declared that "[c]hildren should not have to needlessly hand over their data and forfeit their privacy in order to do their schoolwork . . . especially given the wide and increasing adoption of [education technology] tools."[2]

50.    Moreover, privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

51.    For example, a Consumer Reports study has revealed that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them. Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how companies collect data about them.

---

[2] FTC, *Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act* (May 19, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy%20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20Technology.pdf (last accessed on Sept. 4, 2025).

52.     Technology users act consistently with these preferences. For instance, following a new rollout of the iPhone operating software – which asks users for clear, affirmative consent before allowing companies to track them – 88% of worldwide users and 96% of U.S. users chose not to share data when prompted.

53.     Another recent study by DataGrail revealed that 67% of people were willing to pay $100 or more annually to keep their information out of the hands of companies and the government. The same study revealed that 75% of people would abandon brands that do not take care of their data.

### *PowerSchool Holdings LLC's and Hobsons, Inc.'s Promises to Users*

54.     Given the limitations imposed on the release, transfer, disclosure and dissemination of education and school student records and the information contained therein, PowerSchool Holdings LLC and Hobsons, Inc. assured Naviance users that their information would remain private and confidential, further bolstering Plaintiff's and Class Members' reasonable expectation of privacy.

55.     PowerSchool Holdings LLC has represented, and continues to represent, that it is a signatory to the Student Privacy Pledge, a pledge by K-12 school service providers to safeguard student privacy.

56.     Before its acquisition by PowerSchool Holdings LLC, Hobsons, Inc. also represented that it was a signatory to the Student Privacy Pledge.

57.     As signatories to the Student Privacy Pledge, PowerSchool Holdings LLC and Hobsons, Inc. promised, among other things:

    a.     Not to collect, maintain, use or share student personal information beyond that needed for authorized educational/school purposes, or as authorized by the parent/student;

b.　　To collect use, share, and retain student personal information only for purposes for which they were authorized by the educational institution/agency, teacher or the parent/student;

c.　　To disclose clearly in contracts or privacy policies, including in a manner easy for parents and teachers to understand, what types of student personal information they collect, if any, and the purposes for which the information they maintain is used or shared with third parties; and

d.　　To require that their vendors with whom student personal information is shared in order to deliver the educational service, if any, are obligated to implement these same commitments for the given student personal information.

58.　　Further, on Hobsons, Inc.'s website, it promised that "Protecting the privacy and security of student data is at the core of the work we do to make Naviance by Hobsons a trusted platform for schools and districts – and for the parents and students that we collectively serve." Hobsons, Inc. further promised that "We understand and take very seriously our obligations and responsibilities to act as good stewards of the information that schools entrust to us to provide them with tools to support their college and career readiness programs in the way that they see fit."

59.　　On PowerSchool Holdings LLC's website, it represented that it "complies with applicable privacy laws that impact students and children."

***Defendant's Data Analytics Platform***

60.　　Defendant is a software-as-a-service provider that offers a data analytics platform and code that, *inter alia*, automatically intercepts website users' online communications through a feature called Autocapture.

61.     As alleged above, Autocapture has the power to intercept communications on an individualized basis over multiple sessions and across different domains, thereby allowing Defendant to amass a profile regarding each user whose data it collects.

62.     A website operator can install Defendant's data analytics platform, which includes Autocapture, by embedding and integrating a snippet of code, written in JavaScript, into the website.

63.     Defendant claims to provide users of its data analytic platform the "easiest and most comprehensive way to automatically capture the user interactions on your site, from the moment of installation forward. *A single snippet grabs every click, swipe, tap, pageview, and fill – forever."*

64.     In the words of Defendant, its technology "collect[s] everything, automatically."

65.     Once embedded and integrated into a website, Defendant's snippet of JavaScript code: (a) allows Defendant's data analytics platform to surreptitiously intercept in real-time the communications of website users; and (b) contemporaneously transmits that information and data to Defendant's servers.

66.     Defendant's interception of a website user's communications within the website begins immediately upon a person visiting a website in which Defendant's data analytics platform and JavaScript code is integrated and embedded – precluding the user from first providing any consent.

67.     Defendant has known, and continues to know, that when it works with education technology providers like PowerSchool Holdings LLC and Hobson's, Inc., the integration and embedding of its data analytics platform into the customers' websites results in Defendant's

14

interception of sensitive and confidential student information, including education and school student school records and the information contained therein.

68.     At relevant times, PowerSchool Holdings LLC and Hobsons, Inc. integrated and embedded Defendant's JavaScript code into the Naviance platform – namely, they integrated and embedded the JavaScript code into the portion of the Naviance platform accessed by students after they logged into the platform with their unique login names and passwords – for the purpose of having Defendant intercept the communications of students while accessing and navigating the Naviance platform.

69.     At relevant times, PowerSchool Holdings LLC and Hobsons, Inc., with Defendant's knowledge and assistance, configured Defendant's data analytics platform so that it would track Naviance users on an individualized basis, even if the users logged into Naviance with different devices. By doing so, Defendant was able to individually identify the Naviance users and track them across different domains.

70.     Moreover, Defendant, through its data analytics platform, intercepted identification numbers that uniquely identified each Naviance user, including Plaintiff and Class Members, which provided Defendant with one way, among others, to identify and track unique users.

71.     The communications intercepted by Defendant from users of the Naviance platform, including Plaintiff and Class Members, was not aggregated or de-identified.

72.     When integrated and embedded into a website, Defendant's data analytics platform is not akin to a tape recorder or a "tool" used by one party to simply record the other. Instead, it involves Defendant, a separate and distinct third-party entity from the parties in the conversation, through the use of Defendant's data analytics platform, including Autocapture, to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party. This is so

15

because Defendant itself is collecting the content of any conversation. That information is then analyzed and processed by Defendant before being provided to any entity that was a party to the conversation (like PowerSchool).

73.    Once Defendant intercepted Naviance users' communications, it had the ability to use such information for its own purposes, including for its internal business purposes. Those internal business purposes could include, among other things, improving, testing, operating, promoting and marketing Defendant's products and services.

74.    At relevant times, Defendant's data analytics platform was not required in order for PowerSchool Holdings LLC or Hobsons, Inc. to provide the Naviance platform to schools and schools districts, including the Board or any other school. Indeed, after PowerSchool terminated its contract with Defendant, PowerSchool continued to make the Naviance platform available to schools and school districts.

75.    Given the surreptitious way in which Defendant intercepts website users' communications within a website, school students logged into the Naviance platform would not know that they were under constant surveillance while using the Naviance platform and that "every click, swipe, tap, pageview and fill" performed within the platform was being intercepted by Defendant.

### *Plaintiff's and Class Members' Sensitive and Confidential Information Had Financial Value*

76.    Plaintiff's and Class Members' private data has economic value.

77.    Data harvesting is the fastest growing industry in the nation. As software, data mining and targeting technologies have advanced, the revenue from digital ads and the consequent value of the data used to target them have risen rapidly.

78.    Consumer data is so valuable that some have proclaimed the data is the new oil.

79.     As a result of the unlawful conduct alleged herein and the resultant unauthorized access to the data of Plaintiff and Class Members, the value of their confidential and sensitive information has been diminished, resulting in harm to Plaintiff and Class Members.

***Plaintiff I.J.'s Use of the Naviance Platform***

80.     In connection with his enrollment at schools operated by the Board, Plaintiff I.J. was required by the Board to use the Naviance platform as part of his educational curriculum and graduation requirements.

81.     Plaintiff I.J. logged into the Naviance platform through a web portal operated by the Board and branded with the Board's logo, using his login credentials for accessing the Board's online network.

82.     Plaintiff I.J.'s communications within the Naviance platform were uniquely affiliated with him and allowed him to be individually identified.

83.     Plaintiff I.J. logged into the Naviance platform multiple times.

84.     While logged into the Naviance platform, and as part of his Board curriculum, Plaintiff I.J., completed, *inter alia*, assessments and surveys designed to match I.J.'s interests, strengths and personal qualities with potential career areas and clusters. Given that the communications described in this paragraph constituted education and school student records, among other reasons, the communications were sensitive and confidential and subject to the restrictions and regulations of the FERPA and ISSRA.

85.     Plaintiff I.J. had a reasonable expectation of privacy in his communications within the Naviance platform and did not consent to the interception and recording of those communications or the unauthorized use of that information.

86.     Unbeknownst to Plaintiff I.J., when he logged into the Naviance platform his communications within the platform were intercepted and recorded and contemporaneously transmitted to Defendant's servers. The interception, monitoring, capture and recording alleged herein began occurring immediately upon I.J. accessing the Naviance platform.

87.     Plaintiff I.J. did not become aware of the surreptitious interception, monitoring, capture and recording of his communications within the Naviance platform until approximately July 2023.

88.     On August 18, 2023, a putative class action was filed in the Northern District of Illinois that named Defendant; PowerSchool Holdings LLC; Hobsons, Inc.; and the Board as defendants – *Q.J. v. PowerSchool Holdings LLC, et al.*, No. 1:23-cv-05689 (N.D. Ill.) (the "N.D. Ill. Class Action"). Plaintiff I.J. was, and remains, a putative class member in the N.D. Ill. Class Action. The N.D. Ill. Class Action arose out of the same facts that give rise to this case. On August 20, 2025, the Court dismissed Defendant from the N.D. Ill. Class Action based on lack of personal jurisdiction. I.J.'s claims against Defendant were tolled throughout the pendency of the N.D. Ill. Class Action.

## CLASS ACTION ALLEGATIONS

89.     Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the following Nationwide Class:

> **Nationwide Class (the "Nationwide Class"):** All natural persons in the United States who used the Naviance platform while a student and while Defendant's analytics software was integrated and embedded therein

90.     In addition, Plaintiff bring this action, pursuant to Federal Rule of Civil Procedure, 23 individually and on behalf of the following subclasses (collectively, the "Subclasses"):

> **Illinois Subclass:** All residents of Illinois who, while students, used the Naviance platform while Defendant's analytics software was integrated and embedded therein.

**Board Student Subclass:** All persons who, while Board Students, used the Naviance platform while Defendant's analytics software was integrated and embedded therein.

91.     Plaintiff reserves the right to amend or modify the class and subclass definitions with greater specificity or division after having had an opportunity to conduct discovery.

92.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations – after considering any tolling, concealment and accrual issues – and ending on the date of entry of any judgment.

93.     Excluded from the Nationwide Class and Subclasses are: (a) Defendant; (b) any parent, affiliate or subsidiary of Defendant; (c) any entity in which Defendant has a controlling interest; (d) any officers or directors of Defendant; (e) any successor or assign of Defendant; and (f) counsel for Plaintiff and Defendant. Also excluded are any judge or court personnel assigned to this case and members of their immediate families.

94.     **Numerosity:** The exact number of members of the Nationwide Class and each Subclass is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Nationwide Class and each Subclass likely consist of hundreds of thousands or millions of individuals, and the members can be identified through the records of Defendant; PowerSchool Holdings LLC; Hobsons, Inc.; and the Board.

95.     **Commonality and predominance:** Common questions of law and fact exist as to all Class Members. These common questions of law and fact predominate over any questions affecting only individual members of the proposed Nationwide Class and Subclasses. Common questions include, but are not limited to, the following:

     a.     Whether Defendant engaged in the wrongful conduct alleged herein;

     b.     Whether the privacy rights of Plaintiff and Class Members were violated;

c.    Whether the rights of Plaintiff and Class Members under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, were violated.

d.    Whether the rights of Plaintiff and Class Members under the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, were violated;

e.    Whether Plaintiff and Class Members are entitled to actual, statutory, punitive and other forms of damages, as well as other monetary relief; and

f.    Whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to, injunctive relief, restitution and disgorgement.

96.    **Typicality:** Plaintiff's claims are typical of the claims of the Nationwide Class and Subclasses he seeks to represent. The claims of Plaintiff and members of the Nationwide Class and Subclasses arise from the same conduct by Defendant and are based on the same legal theories.

97.    **Superiority:** Absent a class action, most members of the Nationwide Class and Subclasses would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Further, certification of a class action to resolve this matter will reduce the possibility of repetitious litigation involving potentially millions of class members.

98.    **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Nationwide Class and Subclasses in that he has no interest that is antagonistic to, or that irreconcilably conflicts with, those of other members of the Nationwide Class or Subclasses. Further, Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**18 U.S.C. § 2511(a)**
**(On behalf of Plaintiff and the Nationwide Class)**

99.    Plaintiff restates and realleges the allegations of paragraphs 1 through 98, above, as though fully set forth herein.

100.    Plaintiff brings this Count against Defendant individually and on behalf of members of the Nationwide Class.

101.    Under the ECPA, it is unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(1)(a).

102.    Under the ECPA, it is unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the ECPA. 18 U.S.C. § 2511(1)(d).

103.    The ECPA protects both the sending and receipt of communications.

104.    Under the ECPA, a "person" includes "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

105.    Under the ECPA, in relevant part, "electronic communication" means:

> any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate commerce or foreign commerce . . . .

18 U.S.C. § 2510(12).

106. Under the ECPA, "'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

107. Under the ECPA, in relevant part, "'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire, oral, or electronic communication . . . ." 18 U.S.C. § 2510(5).

108. The following constitute "devices" within the meaning of 18 U.S.C. § 2105(5):

    a. The computer codes and programs Defendant used to intercept, monitor, capture and record Plaintiff's and Nationwide Class Members' communications and data transmissions while they were accessing and navigating the Naviance platform;

    b. Plaintiff's and Nationwide Class Members' browsers;

    c. Plaintiff's and Nationwide Class Members' computing and mobile devices;

    d. Defendant's web servers;

    e. The web servers from which Defendant intercepted and recorded Plaintiff's and Nationwide Class Members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform;

    f. The computer codes and programs used by Defendant to effectuate its interception and recording of Plaintiff's and Nationwide Class Members' communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform;

    g. The plan Defendant carried out to effectuate its interception and recording of Plaintiff's and Nationwide Class Members' communications, data transmissions and messages while they were using a web browser or mobile application to access and navigate the Naviance platform; and

    h. Defendant's data analytics platform and code embedded and integrated into the Naviance platform.

109. Under the ECPA, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the ECPA] may in a civil action recover

from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

110.    Under the ECPA, the "court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). Additional appropriate relief includes: (a) equitable or declaratory relief; (b) punitive damages; and (c) a reasonable attorney's fee and other litigation costs reasonably incurred. 18 U.S.C. § 2520(b).

111.    Defendant was, and continues to be, a "person" under the ECPA.

112.    In violation of the ECPA, 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted and endeavored to intercept the electronic communications of Plaintiff and Nationwide Class Members, namely the transmissions of the confidential and sensitive information of Plaintiff and Nationwide Class Members, including education and school student records, via Naviance. At relevant times, Defendant knew that its data analytics platform, which included Autocapture, would intercept the electronic communications of Naviance users.

113.    In violation of the ECPA, 18 U.S.C. § 2511(1)(d), Defendant intentionally used, or endeavored to use, the contents of the electronic communications of Plaintiff and Nationwide Class Members, in the manner alleged herein, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Nationwide Class Members in violation of the ECPA, as alleged herein.

114.    Defendant knew and had reason to know that it obtained the electronic communications at issue in violation of the ECPA, as it did not obtain Plaintiff's and/or

23

Nationwide Class Members' consent to intercept the electronic communications and, as alleged below, did so for criminal and tortious purposes.

115. At the time of the above-described electronic communications, Plaintiff and Nationwide Class Members exhibited an expectation that the communications were not subject to interception under circumstances justifying such an expectation, as alleged herein.

116. Plaintiff and Nationwide Class Members did not consent to the interception and disclosure of their sensitive and confidential electronic communications via the Naviance platform.

117. At the time Defendant intentionally intercepted and endeavored to intercept the electronic communications of Plaintiff and Nationwide Class Members, Defendant was not acting under color of law.

118. Defendant intercepted and endeavored to intercept the electronic communications of Plaintiff and Nationwide Class Members for the purpose of committing criminal and tortious acts in violation of the Constitution or laws of the United States or of any State, namely, Defendant intercepted and endeavored to intercept the communications at issue for the purpose of: (a) knowingly intruding into a private place, conversation or matter that would be highly offensive to a reasonable person; (c) violating the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*; and (d) violating the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.*

119. Plaintiff and Nationwide Class Members seek all relief to which they are entitled under the ECPA, including statutory damages, punitive damages, equitable and declaratory relief and attorneys' fees and costs.

24

**COUNT TWO**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 631**
**(On behalf of Plaintiff and the Nationwide Class)**

120.    Plaintiff restates and realleges the allegations of paragraphs 1 through 98, above, as though fully set forth herein.

121.    Plaintiff brings this Count individually and on behalf of members of the Nationwide Class against Defendant.

122.    The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, sets forth its purpose as follows:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

123.    Under the CIPA, "any person who has been injured by a violation of [the CIPA] may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a).

124.    A violation of § 631(a) of the CIPA occurs if, among other things, a person "by means of any machine instrument, or contrivance, or in any other manner":

> [i] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or
>
> [ii] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing

over any wire, line, or cable, or is being sent from, or received at any place within this state, or

[iii] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

[iv] aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above . . . .

Cal. Penal Code § 631(a) (paragraph numbers and line breaks added for readability).

125.    The applicability of Cal. Penal Code § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (the CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (the CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

126.    In violation of the CIPA, Defendant:

a.    intentionally tapped, and made an unauthorized connection – electrically, inductively, or otherwise – with, the lines of internet communication between PowerSchool Holdings LLC and/or Hobsons, Inc., on the one hand, and Plaintiff and Nationwide Class Members, on the other;

b.    willfully and without the consent of all parties to the communications, and in an unauthorized manner, read, attempted to read, and learned the contents and meaning of the communications, data transmissions and messages between Plaintiff and Nationwide Class Members, on the one hand, and PowerSchool Holdings LLC and/or Hobsons, Inc., on the other, while the same were in transit or passing over any wire, line, or cable, or being sent from, or received at any place within California;

c.    used or attempted to use the information obtained via its wiretapping to perform analysis on the communications, data transmissions and messages of Plaintiff and Nationwide Class Members while accessing and navigating the Naviance platform; and

d.   aided and agreed and conspired with PowerSchool Holdings LLC and, on information and belief, Hobsons, Inc., to unlawfully do, permit and cause to be done the unlawful conduct alleged in subparagraphs (a), (b) and (c), above.

127. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA or constitute "any other manner" as used in the CIPA:

a.   The computer codes and programs Defendant used to intercept, monitor, capture and record Plaintiff's and Nationwide Class Members' communications and data transmissions while they were accessing and navigating the Naviance platform;

b.   Plaintiff's and Nationwide Class Members' browsers;

c.   Plaintiff's and Nationwide Class Members' computing and mobile devices;

d.   Defendant's web servers;

e.   The web servers from which Defendant intercepted and recorded Plaintiff's and Nationwide Class Members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform;

f.   The computer codes and programs used by Defendant to effectuate its interception and recording of Plaintiff's and Nationwide Class Members' a communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform;

g.   The plan Defendant carried out to effectuate its interception and recording of Plaintiff's and Class Members' communications, data transmissions and messages while they were using a web browser or mobile application to access and navigate the Naviance platform; and

h.   Defendant's data analytics platform and code embedded and integrated into the Naviance platform.

i.

128. Plaintiff and Nationwide Class Members did not consent to the unlawful conduct of Defendant, as alleged herein.

129. Among the contents of communications, data transmissions and messages Defendant intercepted, read, attempted to read and learned were: (a) the contents of Plaintiff's, and

Nationwide Class Members' confidential education and school student records and the information contained therein.

130. By engaging in the unlawful conduct alleged herein, Defendant violated Plaintiff's, and Nationwide Class Members' statutorily-protected right to privacy.

131. On information and belief, Defendant's violations of the CIPA, as alleged herein, occurred in California.

132. As a result of the conduct alleged herein, under the CIPA, Defendant is liable to Plaintiff and each Nationwide Class Member in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages.

## COUNT THREE
### VIOLATION OF THE CIPA
### Cal. Penal Code § 632
### (On behalf of Plaintiff and the Nationwide Class)

133. Plaintiff restates and realleges the allegations of paragraphs 1 through 98, above, as though fully set forth herein.

134. Plaintiff brings this Count individually and on behalf of members of the Nationwide Class against Defendant.

135. Under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, "any person who has been injured by a violation of [the CIPA] may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a).

136. Section 632 of the CIPA prohibits every person, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, from eavesdropping upon or recording the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio. Cal. Penal Code § 632.

137.    In violation of the CIPA, Defendant intentionally and without the consent of all parties, namely without the consent of Plaintiff and Nationwide Class Members, eavesdropped upon and recorded the confidential communications, data transmissions and messages between: (a) PowerSchool Holdings LLC, on the one hand, and Plaintiff and Nationwide Class Members, on the other; and, on information and belief, (b) Hobsons, Inc., on the one hand, and Plaintiff and Nationwide Class Members, on the other, which communications occurred by means of the internet when Plaintiff and Nationwide Class Members accessed and navigated the Naviance platform.

138.    Defendant accomplished its eavesdropping and recording through the use of an electronic amplifying or recording device or devices, including: (a) its data analytics platform and code that was integrated and embedded into the Naviance platform; (b) its web servers; and (c) its computer code and programs that it utilized in connection with Plaintiff's and Nationwide Class Members' communications within the Naviance platform.

139.    Plaintiff's and Nationwide Class Members' communications, data transmissions and messages within the Naviance platform, including their completion of assessments and surveys, constituted education and school student records under the FERPA and ISSRA, respectively, and were otherwise confidential.

140.    By engaging in the unlawful conduct alleged herein, Defendant violated Plaintiff's and Nationwide Class Members' statutorily-protected right to privacy.

141.    On information and belief, Defendant's violation of the CIPA, as alleged herein, occurred in California.

142.    As a result of the conduct alleged herein, under the CIPA, Defendant is liable to Plaintiff and each Nationwide Class Member in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages.

**COUNT FOUR**
**VIOLATION OF THE ILLINOIS EAVESDROPPING ACT**
**720 Ill. Comp. Stat. 5/14-1, *et seq.***
**(On behalf of Plaintiff and the Illinois and Board Student Subclasses)**

143.    Plaintiff restates and realleges the allegations of paragraphs 1 through 98, above, as though fully set forth herein.

144.    Plaintiff brings this Count individually and on behalf of members of the Illinois and Board Student Subclasses against Defendant.

145.    Under the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, *et seq.*, it is unlawful for a person to knowingly and intentionally "intercept[], record[], or transcribe[], in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication." 720 Ill. Comp. Stat. 5/14-2(a)(3).

146.    Under the Illinois Eavesdropping Act, an injured party is entitled to civil remedies against both the eavesdropper and the eavesdropper's principal. 720 Ill. Comp. Stat. 5/14-6.

147.    Under the Illinois Eavesdropping Act, a "private electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, when the sending or receiving party intends the electronic communication to be private under circumstances reasonably justifying that expectation." 720 Ill. Comp. Stat. 5/14-1(e).

148.   Under the Illinois Eavesdropping Act, "surreptitious" means "obtained or made by stealth or deception, or executed through secrecy or concealment." 720 Ill. Comp. Stat. 5/14-1(g).

149.   Under the Illinois Eavesdropping Act, an "eavesdropper" is "any person, including any law enforcement officer and any party to a private conversation, who operates or participates in the operation of any eavesdropping device contrary to the provisions of [the Illinois Eavesdropping Act] or who acts as a principal . . . ." 720 Ill. Comp. Stat. 5/14-1(b).

150.   Under the Illinois Eavesdropping Act, an "eavesdropping device" is "any device capable of being used to hear or record oral conversations or intercept or transcribe electronic communications whether such conversation or electronic communication is conducted in person, by telephone, or by any other means." 720 Ill. Comp. Stat. 5/14-1(a).

151.   Under the Illinois Eavesdropping Act, the information Plaintiff and Illinois and Board Student Subclass Members sent and received while using the Naviance platform, including responses to surveys and assessments, information about interests in colleges and information regarding potential future careers and educational opportunities constituted – and continue to constitute – private electronic communications.

152.   Under the Illinois Eavesdropping Act, the following constitute eavesdropping devices, as they are capable of being used to record and intercept electronic communications, including the electronic communications of Plaintiff and members of the Subclasses while accessing and navigating the Naviance platform:

    a.    The computer codes and programs Defendant used to intercept, monitor, capture and record Plaintiff's and Illinois and Board Student Subclass Members' communications and data transmissions while they were accessing and navigating the Naviance platform;

    b.    Plaintiff's and Illinois and Board Student Subclass Members' browsers;

31

c.      Plaintiff's and Illinois and Board Student Subclass Members' computing and mobile devices;

d.      Defendant's web servers;

e.      The web servers from which Defendant intercepted and recorded Plaintiff's and Illinois and Board Student Subclass Members' communications, data transmissions and messages while they were using a web browser to access and navigate the Naviance platform;

f.      The computer codes and programs used by Defendant to effectuate its interception and recording of Plaintiff's and Illinois and Board Student Subclass Members' communications, data transmissions and messages while they were using a browser to access and navigate the Naviance platform;

g.      The plan Defendant carried out to effectuate its interception and recording of Plaintiff's and Illinois and Board Student Subclass Members' communications, data transmissions and messages while they were using a web browser or mobile application to access and navigate the Naviance platform; and

h.      Defendant's data analytics platform and code embedded and integrated into the Naviance platform.

153.    Defendant was an eavesdropper under the Illinois Eavesdropping Act because it operated an eavesdropping device on the Naviance platform.

154.    Defendant committed eavesdropping under the Illinois Eavesdropping Act because it knowingly and intentionally intercepted and recorded private electronic communications to which it was not a party, namely, the private electronic communications alleged herein, without the consent of all parties to the private electronic communications.

155.    Plaintiff and Illinois and Board Student Subclass Members did not consent to Defendant's interception and recording of their private electronic communications while accessing and navigating the Naviance platform.

156.    The unlawful conduct of Defendant, as alleged herein, has injured Plaintiff and Illinois and Board Student Subclass Members and entitles them to actual and punitive damages.

**COUNT FIVE**
**INTRUSION UPON SECLUSION**
**(On behalf of Plaintiff and the Nationwide Class)**

157.    Plaintiff restates and realleges the allegations of paragraphs 1 through 98, above, as though fully set forth herein.

158.    Plaintiff brings this Count individually and on behalf of members of the Nationwide Class against Defendant.

159.    Plaintiff and Nationwide Class Members had a legitimate expectation of privacy in their sensitive and confidential education and school student records and the information contained therein and their communications within the Naviance platform.

160.    Plaintiff and Nationwide Class Members were entitled to protection of this information against unauthorized intrusion by third parties.

161.    Through Defendant's data analytics platform and code that was surreptitiously integrated and embedded within the Naviance platform, Defendant, without authorization, intruded on, intercepted and recorded Plaintiff's and Nationwide Class Members' sensitive and confidential education and school student records and the information contained therein, as well as the communications of Plaintiff and Nationwide Class Members.

162.    Defendant's unauthorized conduct – targeted towards school-age children – is highly offensive to a reasonable person.

163.    The intrusion was into a place or thing that was private and entitled to be private.

164.    Given the federal and state laws protecting the information at issue, as well as the promises of PowerSchool Holdings LLC and Hobsons, Inc. regarding the importance of privacy, it was reasonable for Plaintiff and Nationwide Class Members to believe that the information and

activities described herein would be kept private and confidential and would not be disclosed without their authorization.

165. Defendant's conduct, as alleged herein, constitutes an unauthorized intrusion or prying into Plaintiff's and Nationwide Class Members' seclusion.

166. Defendant acted with a knowing state of mind when it engaged in the conduct alleged herein.

167. As a direct and proximate result of the above acts of Defendant, Plaintiff and Nationwide Class Members sustained injuries, damages and anguish and otherwise suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff I.J., a minor, through his parent and legal guardian, J.J., individually and on behalf of members of the Nationwide Class and Subclasses, respectfully requests that the Court:

a.    Certify the proposed Nationwide Class and Subclasses, name Plaintiff the representative of the proposed Nationwide Class and Subclasses and appoint Plaintiff's counsel as Class counsel;

b.    Award Plaintiff and members of the proposed Nationwide Class and Subclasses statutory, compensatory, punitive, exemplary, consequential, general and any other type of permissible damages in amounts to be determined at trial;

c.    Grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts and practices alleged herein;

d.    Enter an order declaring that Defendant violated the statutory provisions alleged herein;

e.      Award Plaintiff and members of the proposed Nationwide Class and

Subclasses pre-judgment and post-judgment interest as permitted by law;

f.      Award to Plaintiff the costs and expenses of the action and reasonable

attorneys' fees; and

g.      Grant all such other relief as it deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  September 11, 2025

Respectfully submitted,

**ARISOHN LLC**

By:     /s/ Joshua D. Arisohn
        Joshua D. Arisohn
        513 Eighth Avenue, #2
        Brooklyn, NY 11215
        Telephone: (646) 837-7150
        Email: josh@arisohnllc.com

        Scott R. Drury (*to be admitted pro hac vice*)
        **DRURY LEGAL, LLC**
        6 Carriage Lane
        Highwood, Illinois 60040
        (312) 358-8225
        scott@drurylegal.com

        *Counsel for Plaintiff and putative class members*