UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

I.J., a minor through his parent and legal guardian, J.J., individually and on behalf of all other persons similarly situated,

Case No. 1:25-cv-07583-JLR

Plaintiff,

-against-

HEAP INC., now known as CONTENT SQUARE, INC.

Defendant.

--------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE, FOR A STAY**

LEWIS BRISBOIS BISGAARD & SMITH LLP
Attorneys for Defendant
7 World Trade Center, 11th Floor
New York, NY 10007

# TABLE OF CONTENTS

**Page**

I. Introduction ..... 1
II. Factual Background ..... 2
III. Legal Standard ..... 3
IV. Argument ..... 4
A. Plaintiff Lacks Article III Standing to Bring His Claims ..... 4
B. Plaintiff's Electronic Communications Privacy Act Claim Fails ..... 6
1. Heap Was a Party to the Allegedly Intercepted Communication. ..... 6
2. Plaintiff's ECPA Claim Fails Because the Tortious or Criminal Conduct Exception Does Not Apply ..... 7
3. Even if Plaintiff Were Able to State a Claim Under ECPA (He Cannot), Plaintiff's Claim Is Still Barred by the Statute of Limitations. ..... 9
C. Plaintiff's California Invasion of Privacy Act Claim Fails ..... 11
1. CIPA Does Not Apply to Non-California Residents. ..... 11
2. Plaintiff's CIPA Section 631 Claim Fails Under the Party Exception. ..... 11
3. Plaintiff's Claim Under Clause One of Section 631(a) Fails Because Plaintiff Does Not Allege Telephonic Communications. ..... 12
4. Plaintiff's Claim Under Section 631(a) Fails Because He Does Not Plausibly Allege That Heap Read His Communications While They Were "In Transit." ..... 13
5. Plaintiff's §632 Claim Fails as a Matter of Law. ..... 14
D. Plaintiff's Illinois Eavesdropping Act Claim Fails ..... 15
E. Plaintiff's Intrusion Upon Seclusion Claim Fails ..... 16
V. Alternatively, This Action Should Be Stayed Pending at the Minimum, issuance of a Class Certification Decision in the Parallel Action ..... 17
A. The Efficiency and Avoidance of Duplicative and Inconsistent Rulings Mandate a Stay of the Second Filed Suit ..... 18
1. The Parties are Similar. ..... 19
2. The Issues Are Substantially Similar, If Not Identical. ..... 20
3. No Exception to the First Filed Rule Applies. ..... 21
B. Tailored Stay with Status Reporting Ensures Ongoing Oversight ..... 24
VI. Discovery Should Be Stayed ..... 24
VII. Conclusion ..... 25

# TABLE OF AUTHORITIES

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
860 F. Supp. 128 (S.D.N.Y. 1994) ....................22

*Acosta v. Scott Labor LLC*,
377 F. Supp. 2d 647 (N.D. Ill. 2005) ....................16

*Adam v. Jacobs*,
950 F.2d 89 (2d Cir. 1991)....................19

*Adams v. PSP Grp., LLC*,
691 F. Supp. 3d 1031 (E.D. Mo. 2023), *appeal dismissed*, 2025 WL 2895587
(8th Cir. July 17, 2025)....................6

*Adoma v. Univ. of Phoenix, Inc.*,
711 F. Supp. 2d 1142 (E.D. Cal. 2010)....................19

*Ahringer v. LoanDepot, Inc.*,
715 F. Supp. 3d 1274 (C.D. Cal. 2024) ....................11

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)....................10

*Andreas-Moses v. Hartford Fire Ins. Co.*,
2017 WL 5634709 (N.D.N.Y. Oct. 30, 2017) ....................19, 20

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ....................15

*Arch Ins. Co. v. Centerplan Constr. Co.*,
2017 WL 5184440 (D. Conn. Nov. 8, 2017) ....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 13, 17

*Avnet, Inc. v. Am. Motorists Ins. Co.*,
115 F.R.D. 588 (S.D.N.Y. 1987) ....................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3, 13

*Bender v. Board of Fire and Police Comm'rs*,
539 N.E.2d 234 (Ill. App. Ct. 1989) ....................15

*Bukhari v. Deloitte & Touche LLP*,
2012 WL 5904815 (S.D.N.Y. Nov. 26, 2012)....................19

*Burke v. Bimbo Bakeries USA, Inc.*,
2019 WL 6068038 (N.D.N.Y. Nov. 15, 2019) ....................20

*Byron v. Genovese Drug Stores, Inc.*,
2011 WL 4962499 (E.D.N.Y. Oct. 14, 2011)....................20

*C.C. v. Med-Data Inc.*,
2022 WL 970862 (D. Kan. Mar. 31, 2022) ....................5

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................7

*Castillo v. Taco Bell of Am., LLC*,
960 F. Supp. 2d 401 (E.D.N.Y. 2013) ....................20

*Catholic Social Servs., Inc. v. I.N.S.*,
232 F.3d 1139 (9th Cir. 2000) ....................10

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014) ....................18

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)....................10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................4

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................11, 12, 13

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018) ....................8, 9

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) .............6

*Cowan v. Ernest Codelia, PC*,
149 F. Supp. 2d 67 (S.D.N.Y. 2001)....................21

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983)....................10

*Curcio v. Hartford Fin. Servs. Grp.*,
472 F. Supp. 2d 239 (D. Conn. 2007)....................21

*Davis v. Fresno Unified Sch. Dist.*,
14 Cal. 5th 671 (2023) ....................15

*Davis v. Norwalk Econ. Opportunity Now, Inc.*,
534 F. App'x 47 (2d Cir. 2013) ....................21

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. 2025) ....................11

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................1

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)....................13

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................7, 8

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008)....................18, 19, 21, 23

*Fac. v. New York Univ.*,
11 F.4th 68 (2d Cir. 2021) ....................4

*First City Nat'l Bank & Trust Co. v. Simmons*,
878 F.2d 76 (2d Cir. 1989)....................18

*Gastineau v. ESPN Inc.*,
2025 WL 2733155 (S.D.N.Y. Sept. 24, 2025)....................25

*Goldstein v. Pataki*,
516 F.3d 50 (2d Cir. 2008)....................4, 13

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................16

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................12

*Green v. Chicago Tribune Co.*,
286 Ill. App. 3d 1, 675 N.E.2d 249 (1996) ....................16

*Hagy v. Demers & Adams*,
882 F.3d 616 (6th Cir. 2018) ....................5

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (N.D. Cal. 2023) ....................12

*Hilb Rogal & Hobbs Co. v. MacGinnitie*,
2005 WL 441509 (D. Conn. Feb. 14, 2005) ....................20

*Howell v. New York Post Co.*,
81 N.Y.2d 115, 612 N.E.2d 699 (1993)....................16

*Humble Surgical Hosp., LLC v. Aetna Life Ins. Co.*,
2014 WL 12768253 (D. Conn. Sept. 30, 2014)....................22

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009)....................24

*IT Source, LLC v. Yash Techs., Inc.*,
2007 WL 9753188 (D. Conn. Dec. 19, 2007)....................19, 20, 21

*Jacobson v. CBS Broad., Inc.*,
2014 IL App (1st) 132480, 386 Ill. Dec. 12, 19 N.E.3d 1165 (Ill. App. Ct. 2014)....................16

*Johnson v. N.Y. Univ. Sch. of Educ.*,
205 F.R.D. 433 (S.D.N.Y. 2002)....................25

*Keaton v. Dep't of Rehab. Servs.*,
2018 WL 3677899 (D. Conn. Aug. 2, 2018)....................21

*Kisil v. Illuminate Educ., Inc.*,
2025 WL 2589000 (9th Cir. Sept. 8, 2025)....................5

*Kola v. Forster & Garbus LLP*,
2021 WL 4135153 (S.D.N.Y. Sept. 10, 2021)....................4

*Kreek v. Wells Fargo & Co.*,
652 F. Supp. 2d 1053 (N.D. Cal. 2009)....................10

*LaSala v. Needham & Co., Inc.*,
399 F. Supp. 2d 421 (S.D.N.Y. 2005)....................17

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................7

*Loiacono v. Allied Partners Mgmt. LLC*,
2025 WL 3089176 (S.D.N.Y. Nov. 5, 2025)....................25

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012)....................17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................4

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
19 F.4th 58 (2d Cir. 2021) ....................................................................................4, 5

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ..........................................................................16

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021)...............................................................................................6

*Miller v. Brightstar Asia, Ltd.*,
2020 WL 7483945 (S.D.N.Y. Dec. 21, 2020) ......................................................................24

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017).......................................................................14

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
14 F. Supp. 3d 191 (S.D.N.Y. 2014)......................................................................................9

*Odukwu v. City of Buffalo*,
2005 WL 8173615 (W.D.N.Y. Dec. 19, 2005).......................................................................10

*Ofosu v. McElroy*,
98 F.3d 694 (2d Cir. 1996).................................................................................................17

*Oleg Cassini, Inc. v. Serta, Inc.*,
2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ....................................................................19, 20

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)..................................................................................7

*People v. Braden*,
14 Cal. 5th 791 (2023) .......................................................................................................14

*People v. Clark*,
6 N.E.3d 154 (Ill. 2014) .....................................................................................................15

*People v. Gray*,
58 Cal. 4th 901 (2014) .......................................................................................................14

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ...............................................................................................8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ...........................................................................................1, 6

*In re Practicefirst, Data Breach Litigation*
2022 WL 354544 (W.D.N.Y. Feb. 7, 2022) ...........................................................................5

*Raines v. Byrd*,
521 U.S. 811 (1997) ....4

*Richard K. v. Utd. BeHavioral Health*,
2019 WL 3083019 (S.D.N.Y. June 28, 2019) ....23

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....11, 12

*Salib v. I.C. Sys., Inc.*,
2002 WL 31060368 (D. Conn. July 24, 2002) ....21

*Santana v. Cavalry Portfolio Servs., LLC*,
2019 WL 6173672 (S.D.N.Y. Nov. 19, 2019) ....20

*Scottrade, Inc. v. BroCo Invs., Inc.*,
774 F. Supp. 2d 573 (S.D.N.Y. 2011) ....7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....4

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ....9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....12

*Tate-Small v. Saks Inc.*,
2012 WL 1957709 (S.D.N.Y. May 31, 2012) ....19

*Timberland Machines, and Irr., Inc. v. Echo, Inc*,
2009 WL 996044 (D. Conn. Apr. 13, 2009) ....13

*Torres v. Prudential Financial*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....13

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ....3, 4

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) ....7, 8

*United States v. Tarantino*,
617 Fed. Appx. 62 (2d Cir. 2015) ....7

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. February 13, 2005) ....5

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ....................12

*Zahl v. Kosovsky*,
2011 WL 779784 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) ....................10

**Constitutions**

U.S. CONST. Article III, § 2 ....................4

**Statutes**

18 U.S.C. § 2511 ....................7, 8, 9

18 U.S.C. § 2520(e) ....................9, 10

Cal. Penal Code § 630 ....................8, 11

Cal. Penal Code § 631 ....................11, 12, 13, 14

Ca. Penal Code § 632 ....................2, 14, 15

720 Ill. Comp. Stat. 5/14-1, et seq. ....................9

720 Ill. Comp. Stat. 5/14-2(a)(3) ....................15

**Rules**

F.R.C.P. 12(b)(1) ....................3

F.R.C.P. 12(b)(6) ....................3, 9

F.R.C.P. 23 ....................23, 24

F.R.C.P. 26(c) ....................24

**Other Authorities**

1 Newberg on Class Actions § 1:9 (5th ed.)) ....................23

## I. INTRODUCTION

Heap Inc. ("Heap"), a software-as-a-service provider, supplied PowerSchool Holdings, LLC ("PowerSchool") with a data analytics platform integrated into the Naviance system used by school districts, including Chicago Public Schools ("CPS"). Plaintiff, an Illinois resident and CPS student, accessed Naviance and now wrongly accuses Heap of wiretapping, eavesdropping, and invasion of privacy based solely on PowerSchool's use of Heap's analytics code.

Judge Rakoff's decision in *Popa v. Microsoft Corp.*, 153 F.4th 784, 795 (9th Cir. 2025), confirms that such claims lack a cognizable injury and do not constitute unlawful wiretapping. He explained that routine tracking of clicks and scrolls is analogous to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales"—benign and non-invasive. *Id.* at 791. Like the technology in *Popa*, Heap's software simply enables PowerSchool to evaluate which parts of its website are effective for students. *See id*. at 786; *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024) (dismissing wiretapping claims based on similar tools).

Plaintiff's complaint should be dismissed in its entirety. Despite invoking multiple statutory and common-law theories, Plaintiff fails to allege any concrete injury sufficient to establish Article III standing. His claims rest on speculative assertions of "loss of privacy" and statutory damages, neither of which constitute the particularized harm required by the Supreme Court and Second Circuit.

Even if standing were assumed, Plaintiff's substantive claims under the Electronic Communications Privacy Act ("ECPA"), the California Invasion of Privacy Act ("CIPA"), and the Illinois Eavesdropping Act fail as a matter of law. Heap was a party to the alleged communications, and the crime-tort exception does not apply absent allegations of blackmail, threats, or other

insidious intent. The claims are also time-barred, and tolling principles do not permit a follow-on class action.

Plaintiff's CIPA claims fail for additional reasons: he is not a California resident, he does not allege telephonic communications, and software code is not a "device" under Section 632. His Illinois Eavesdropping Act and intrusion upon seclusion claims likewise falter, as the alleged conduct involves routine commercial analytics rather than highly offensive intrusions into sensitive personal matters.

Finally, even if dismissal were denied, this action should be stayed under the first-filed rule and principles of judicial economy, pending resolution of class certification in the parallel *Q.J.* action in the Northern District of Illinois.

Additionally, discovery in this putative class action should be stayed pending the Court ruling on Heap's motion to dismiss.

In short, Plaintiff has not alleged standing, has not stated a claim, and cannot overcome the statutory and doctrinal barriers to relief. The Complaint should therefore be dismissed, or at minimum stayed.

## II. Factual Background

Heap "is a software-as-a-service provider that offers its customers a data analytics platform that, among other things, automatically captures all of the data of its customers' website users while those users access and navigate the websites ("Autocapture") – i.e., "What they click. Where they go. What they do, even when you're not looking.'" Compl. ¶ 13. Plaintiff alleges "PowerSchool Holdings LLC embedded and integrated Defendant's data analytics platform and code into the Naviance platform." *Id.* at ¶ 21; *see also id.* at ¶ 68.

Plaintiff "resides in Cook County, Illinois." *Id.* at ¶ 9. Plaintiff asserts that as a student at Chicago Public Schools he accessed the Naviance platform. *Id.* at ¶¶ 80, 83. Plaintiff alleges he "logged into the Naviance platform through a web portal operated by the Board." *Id.* at ¶ 81. Plaintiff does not allege what type of device he used to access the Naviance platform. Plaintiff asserts while logged in he completed "assessments and surveys designed to match I.J.'s interests, strengths and personal qualities with potential career areas and clusters." *Id.* at ¶ 84. Plaintiff alleges this information was "intercepted and recorded and contemporaneously transmitted to Defendant's servers." *Id.* at ¶ 86. Plaintiff does not allege Heap "read" or "attempted to read" his information. Plaintiff only makes a hypothetical reference of Heap's possible use of the received information. *See id.* at ¶ 73 ("Once Defendant intercepted Naviance users' communications, it had the ability to use such information for its own purposes, including for its internal business purposes. Those internal business purposes *could include*, among other things, improving, testing, operating, promoting and marketing Defendant's products and services.")(emphasis added).

## III. Legal Standard

***Rule 12(b)(1).*** "For there to be a case or controversy under Article III [of the U.S. Constitution], the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted). Plaintiff bears the burden to demonstrate standing for each claim alleged and form of relief sought. *Id.* at 431. Plaintiff must demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citation omitted).

***Rule 12(b)(6).*** To survive a motion to dismiss, a complaint must allege facts showing entitlement to relief, not mere conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, "at a bare minimum, the operative

standard requires the plaintiff [to] provide the grounds upon which [her] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (first alteration in original) (cleaned up).

## IV. ARGUMENT

### A. PLAINTIFF LACKS ARTICLE III STANDING TO BRING HIS CLAIMS

Article III limits federal jurisdiction to "Cases" and "Controversies." U.S. CONST. Art. III, § 2. Plaintiffs must establish standing. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The "irreducible constitutional minimum" requires (1) injury in fact, (2) traceability, and (3) redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Injury in fact must be a concrete, particularized invasion that is actual or imminent, not hypothetical. *Id*. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Court has rejected the idea that statutory rights alone confer standing. *TransUnion*, 594 U.S. at 436. Only plaintiffs concretely harmed may sue. *Id*.; *see also Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 64 (2d Cir. 2021) ("No concrete harm; no standing."). Concrete harms include physical, monetary, or cognizable intangible harms. *TransUnion*, 141 S. Ct. at 2205–06. A theory lacking a key element of an analogous common-law tort does not establish standing. *Kola v. Forster & Garbus LLP*, 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021).

"Plaintiff bears the burden of establishing standing." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) . At the pleading stage, he must "clearly allege facts" showing injury-in-fact. *Fac. v. New York Univ*., 11 F.4th 68, 74 (2d Cir. 2021).

Plaintiff here alleges only two theories of Article III harm: statutory damages and invasion of privacy. Neither has merit. Statutory damages alone do not constitute harm. *Spokeo*, 578 U.S. at 341. "An injury in law is not an injury in fact." *TransUnion*, 141 S. Ct. at 2205. As *TransUnion* explained, if two plaintiffs seek statutory damages from a company, only the plaintiff whose land

was contaminated had standing; the other, lacking concrete harm, did not. *Id.* at 2206. Statutes cannot "enact an injury into existence." *Id.* (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)); *see also Maddox*, 19 F.4th at 60. Thus, Plaintiff must identify a concrete injury. Having failed to do so, the Complaint must be dismissed.

Plaintiff's asserted "invasion of privacy" likewise fails to establish a concrete injury to support standing because he does not identify any actual or imminent harm arising from it. A "loss of privacy" alone is not a concrete harm. *C.C. v. Med-Data Inc.*, 2022 WL 970862, at *10 (D. Kan. Mar. 31, 2022). Plaintiffs instead must allege a "concrete or particularized harm from [their] alleged loss of privacy." *Id.*; *see also In re Practicefirst*, *Data Breach Litigation* 2022 WL 354544, at *8 (W.D.N.Y. Feb. 7, 2022) (collecting cases where courts rejected "loss of privacy" as a basis for standing in the data security context because "plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure"). Plaintiff identifies nothing private or sensitive accessed by Heap. He alleges only completion of career surveys transmitted to Heap's servers. Compl. ¶¶ 84–86.

Courts in this district have found standing wanting in closely analogous situations. In *Xu v. Reuters News & Media Inc.,* the plaintiff alleged that Reuters misused his IP address to conduct "targeted advertising." 2025 WL 488501, at *3 (S.D.N.Y. February 13, 2005). The court dismissed the lawsuit against Reuters precisely because the plaintiff did not allege that Reuters' alleged interception of his IP address resulted in any concrete harm, such as expenses unreasonably incurred as a result of the data collection or a substantial risk of future identity theft or fraud. *Id.* Courts routinely reach a similar conclusion. *See id.* at *4 (collecting cases); See also *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000 (9th Cir. Sept. 8, 2025) (holding that a data breach affecting over three million students was insufficient to establish standing). Indeed, the Second

Circuit has held that even the disclosure of collected data does not confer standing unless plaintiffs plausibly allege that their information was intentionally targeted or misused, or that the information was of a uniquely sensitive nature—such as medical records, rather than the routine search of career areas at issue here. *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021); *see id.* at 298 (describing data inadvertently disclosed to third parties, which included "Social Security numbers, home addresses, dates of birth, telephone numbers, educational degrees, and dates of hire"); *see also Popa,* 153 F.4th at 791 (dismissing based on lack of Article III standing because plaintiff "identifies no embarrassing, invasive, or otherwise private information collected by [session replay code]. Indeed, the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."); *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) (dismissing based on Article III standing because the alleged use of session replay code to record website interactions did not constitute a concrete harm); *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1041–42 (E.D. Mo. 2023), *appeal dismissed*, 2025 WL 2895587 (8th Cir. July 17, 2025) (same). Because Plaintiff has failed to plausibly allege any particularized concrete injury sufficient to establish standing, the Court should dismiss this lawsuit.

## B. PLAINTIFF'S ELECTRONIC COMMUNICATIONS PRIVACY ACT CLAIM FAILS

### *1. Heap Was a Party to the Allegedly Intercepted Communication.*

The Wiretap Act "generally prohibits the interception or wiretapping of electronic communications not authorized by a court of law or permitted by one of the statute's exceptions."

*United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013) (citing 18 U.S.C. § 2511).[1] One such statutory exception exempts "parties to the communication" from liability. 18 U.S.C. § 2511(2)(d).[2]

### 2. *Plaintiff's ECPA Claim Fails Because the Tortious or Criminal Conduct Exception Does Not Apply.*

Plaintiff cannot salvage his claim by arguing that even if it were a party to the communication, Heap may still be liable under the crime-tort exception to ECPA. In the Second Circuit, that exception is "construed narrowly." *Jiau*, 734 F.3d at 152. "[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). The crime or tort must have been the "primary motivation" or "a determinative factor" for the defendant's conduct. *In re DoubleClick Inc. Privacy Litig*., 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001); *see also United States v. Tarantino*, 617 Fed. Appx. 62, 65 (2d Cir. 2015) (summary order). Moreover, the exception "is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *Jiau*, 734 F.3d at 152.

[1] Because the Wiretap Act has both criminal and civil applications, it must be construed strictly with any ambiguity resolved in favor of the defendant. *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *Scottrade, Inc. v. BroCo Invs.,* Inc., 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011).

[2] To avoid duplication and because "[c]ourts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption," *Pena v. GameStop, Inc*., 670 F. Supp. 3d 1112, 1118 (S.D. Cal. 2023), see discussion re party-exception, *infra* Section C.2.

In *In re DoubleClick Inc. Priv. Litig.*, plaintiffs similarly brought a class action lawsuit against DoubleClick for violation of the Wiretap Act and a number of other privacy laws based on DoubleClick's practice of "collecting, compiling and analyzing information about Internet users through proprietary technologies and techniques" which it used to "target online advertising." 154 F. Supp. 2d at 500. Judge Buchwald granted DoubleClick's motion to dismiss that claim for failure to articulate any facts to support an inference that defendant accessed plaintiffs' communications "with the 'insidious' intent to harm plaintiffs or others." *Id.* at 518. "In fact, everything in the Amended Complaint suggests that DoubleClick has been consciously and purposefully executing a highly-publicized market-financed business model in pursuit of commercial gain—a goal courts have found permissible under § 2511(2)(d)." *Id.* (collecting cases). Accordingly, the court found "DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites." *Id.* at 519; *see also Cohen v. Casper Sleep Inc.,* 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (finding crime-tort exception inapplicable where defendant implemented website code for marketing purposes).

A criminal or tortious purpose "must be intended at the time of the interception." *Id.* at *3 (quoting *Jiau*, 734 F.3d at 152). "The focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Planned Parenthood Fed'n of Am., Inc. v. Newman,* 51 F.4th 1125, 1136 (9th Cir. 2022) (citation omitted). Plaintiff likewise fails to aver that Heap's "primary motivation" was to injure him. The Complaint specifically rebuts the existence of any criminal or tortious purpose; instead, it alleges that Heap "intercepted and endeavored to intercept the communications at issue for the purpose of: (a) knowingly intruding into a private place, conversation or matter that would be highly offensive to a reasonable person; (c) violating the California Invasion of Privacy Act,

Cal. Penal Code § 630, et seq.; and (d) violating the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1, et seq." Compl. ¶ 118. Plaintiff only makes a hypothetical reference of Heap's possible use of the received information. *See id.* at ¶ 73 ("Once Defendant intercepted Naviance users' communications, it had the ability to use such information for its own purposes, including for its internal business purposes. Those internal business purposes *could include*, among other things, improving, testing, operating, promoting and marketing Defendant's products and services.") (emphasis added).

There are no allegations that PowerSchool or Heap intended to use Plaintiff's information to "blackmail, threaten, or publicly embarrass the plaintiff." *Cohen*, 2018 WL 3392877, at *3–4 (holding that defendants' primary motivation for installing tracking technology was to provide targeted marketing to website visitors). Thus, based on Plaintiff's own allegations, the requisite criminal or tortious intent is absent. Moreover, unlike in *Cohen*, there are no allegations that Heap actually used the technology to deliver targeted marketing to users. Yet in *Cohen* the court nevertheless dismissed the complaint where the defendant collected data with tracking technology for that purpose. *Id.* at *4. Accordingly, I.J.'s claim for violation of 18 U.S.C. § 2511 must be dismissed. *Id.*

#### ***3. Even if Plaintiff Were Able to State a Claim Under ECPA (He Cannot), Plaintiff's Claim Is Still Barred by the Statute of Limitations.***

It is appropriate to entertain a Rule 12(b)(6) motion based on the statute of limitations when that "defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *accord Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014). Plaintiff claims he "did not become aware of the surreptitious interception, monitoring, capture and recording of his communications within the Naviance platform until approximately July 2023." Compl. ¶ 87. ECPA Section 2520(e) requires that any

action under § 2520(a) be commenced no later than two years "after the date upon which the claimant first ha[d] a reasonable opportunity to discover the violation." *See Odukwu v. City of Buffalo*, 2005 WL 8173615, at *3 (W.D.N.Y. Dec. 19, 2005); *Zahl v. Kosovsky*, 2011 WL 779784, at *13 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012). Plaintiff's ECPA claims are untimely because he filed on September 11, 2025—two months after the limitations period expired.

Plaintiff argues his claims are tolled by the pendency of a putative class action in the Northern District of Illinois naming Heap, PowerSchool, Hobsons, and the Board of Education—*Q.J. v. PowerSchool Holdings LLC*, No. 1:23-cv-05689 (N.D. Ill.) (the "Q.J. Action"). Compl. ¶ 88. Not so. In *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974), the Court held that "the commencement of a class action suspends the applicable statute of limitations to all asserted members of the class." *See also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983). But in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018), the Court concluded: "Our answer is no. American Pipe tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join or file individual claims. But American Pipe does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *See also Catholic Social Servs., Inc. v. I.N.S.*, 232 F.3d 1139, 1147 (9th Cir. 2000).

*Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053 (N.D. Cal. 2009), is instructive. There, after denial of certification of a broad class, new plaintiffs attempted to certify the same class. The court found the similarities "readily apparent" and disallowed tolling, reasoning the later action was "an attempt to relitigate the prior denial of class certification." *Id.* at 1061. The same is true here. While no class certification motion has yet been filed in the *Q.J.* Action, its pendency

preserves only Plaintiff's individual claims, not class claims. Plaintiff therefore cannot pursue ECPA or CIPA claims on a class-wide basis.

### C. PLAINTIFF'S CALIFORNIA INVASION OF PRIVACY ACT CLAIM FAILS

#### ***1. CIPA Does Not Apply to Non-California Residents.***

The California Invasion of Privacy Act of 1967 was enacted "to protect the right of privacy of *the people of this state*." Cal. Penal Code § 630 (emphasis added). Thus, a plaintiff "may only bring a CIPA claim on behalf of California residents or people who were in California when the alleged wrong occurred." *Ahringer v. LoanDepot, Inc.,* 715 F. Supp. 3d 1274, 1285 (C.D. Cal. 2024). In *DellaSala v. Samba TV, Inc*., 2025 WL 3034069 *1, 3-4 (N.D. Cal. 2025), the court held that "California's privacy laws do not apply to conduct that occurs to non-residents outside California" and, therefore, dismissed Plaintiff's CIPA claims. Since Plaintiff is neither a California resident (Compl. ¶ 9) nor was he in California when the alleged violations occurred, Counts II and III must be dismissed.

#### ***2. Plaintiff's CIPA Section 631 Claim Fails Under the Party Exception.***

Plaintiff's CIPA Section 631 claim also fails because Heap was merely a tool for PowerSchool—a party to the communications. Under CIPA Section 631, a "person who is a 'party' to a communication is exempt from liability," and the party exception applies where third-party software can be used only to record conversations between a website and a customer. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002-03 (N.D. Cal. 2024). This rule stems from California's longstanding recognition that use of a tool like a tape recorder by a party to a conversation does not violate Section 631, even if the other party is unaware of the recorder. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Accordingly, courts have recognized that a third party's software is not an "unannounced second auditor," in violation of Section 631, when the third party cannot

use its record of an interaction for its own purposes, rather than the purposes of the party to the communication. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 970-71 (N.D. Cal. 2023) (citation omitted) (discussing *Rogers*); *see also, e.g., Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 745-46 (N.D. Cal. 2023) (dismissing Section 631 claim where plaintiff alleged only that a third-party company's software "accesse[d] and analyze[d]" Home Depot's customer service chats in order "to understand what Home Depot customers want" and increase Home Depot sales). To avoid that obstacle, a plaintiff must "state sufficient factual allegations to support an inference that [the third party] is capable of using the intercepted information for another purpose"—i.e., a purpose other than that of the party to the communication. *Cody*, 718 F. Supp. 3d at 1003 (dismissing Section 631 claim for failure to include such allegations). *Accord Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1017 (N.D. Cal. 2023) (finding party exception applied where plaintiff failed to plead "non-conclusory factual allegations to support the use capabilities of the third-party software company" as to the intercepted information).

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), is instructive. Plaintiffs alleged that FullStory wiretapped their communications. The court dismissed, holding FullStory did not intercept or use the data itself. *Id.* at 832–33. Rather, "as a service provider, FullStory is an extension of Noom," providing a tool—like the tape recorder in *Rogers*—that allowed Noom to record and analyze its own data. *Id.* Heap, like FullStory, is an extension of PowerSchool. Plaintiff fails to allege Heap acted as an "unannounced second auditor." *Yockey*, 688 F. Supp. 3d at 970–71. Plaintiff's Section 631 claim should therefore be dismissed.

#### ***3. Plaintiff's Claim Under Clause One of Section 631(a) Fails Because Plaintiff Does Not Allege Telephonic Communications.***

Plaintiff's Section 631 claim should also be dismissed to the extent it rests on the first clause of Section 631(a)(i). *See* Compl. ¶¶ 120-132. That clause penalizes anyone who

"intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system." Cal. Penal Code § 631(a)(i) (emphasis added). As this clause "restricts liability to telephone and telegraph technology," it "does not apply to the internet." *Cody*, 718 F. Supp. 3d at 999-1000. Here, Plaintiff alleges interception of communications made via his internet browser only, Compl. ¶ 81, and does not allege any telephonic communications. His Section 631 claim therefore fails to the extent it rests on clause one.

#### 4. *Plaintiff's Claim Under Section 631(a) Fails Because He Does Not Plausibly Allege That Heap Read His Communications While They Were "In Transit."*

Although Plaintiff parrots the language of CIPA by alleging that Heap "read" his communications while they were in transit, he provides no factual explanation of how Heap supposedly did so. Compl. ¶ 126(b). Such threadbare recitals of statutory elements are insufficient. To survive a motion to dismiss, a complaint must allege facts showing entitlement to relief, not mere conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Accordingly, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which [her] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein*, 516 F.3d at 56 (cleaned up). Courts have rejected CIPA complaints that do not properly support the "in transit" requirement. *See, e.g., Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5–6 (N.D. Cal. Oct. 17, 2025) (granting summary judgment where plaintiff alleged "reading" of communications but failed to show how the in-transit requirement was satisfied); *see also*, *Torres v. Prudential Financial*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) (Judge Breyer ruled that the in-transit requirement was not satisfied when a third-party

company intercepted communications and stored them in a server because the company didn't actually read or attempt to read the communications while they were in transit.)

Plaintiff's conclusory allegation here suffers from the same defect and cannot sustain a Section 631 claim.

### *5. Plaintiff's §632 Claim Fails as a Matter of Law.*

Plaintiff's CIPA Section 632 claim suffers from an additional defect that warrants dismissal. Section 632(a) applies to "use[] [of] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." But Heap's code is not an "electronic amplifying or recording device" within the meaning of Section 632. Heap provides its source code, which can be used on any website. Compl. ¶ 62. And, as courts have previously held in interpreting a separate provision of CIPA, a software code or a software application is not a "device" under the plain meaning of that term. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). Rather, dictionaries define "device" to mean a specialized piece of physical equipment. For example, "Merriam-Webster defines 'device' in relevant part as 'a piece of equipment or a mechanism designed to serve a special purpose or perform a special function,' for example, 'smartphones and other electronic devices' or a 'hidden recording device,'" *id.* at *5 (citing Device, Merriam-Webster Online, (https://www.merriam-webster.com/dictionary/device) (2017)), and Google Dictionary defines "device" as "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment," *id.* (citing Google Dictionary, www.google.com/search?q=Dictionary (2017)).

California courts "generally presume the Legislature intended [a] word . . . to have the same meaning each time it is used" when "the same word . . . appears in different places within a statutory scheme." *People v. Braden*, 14 Cal. 5th 791, 806 (2023) (quoting *People v. Gray*, 58 Cal. 4th 901, 906 (2014)). That "well-established canon[]" applies here, where both Section 632 and

Section 637.7 are part of the same legislative act and prohibit using a "device" to record or track information. *Id.* Construing "device" in Section 632 to refer only to tangible objects abides by that canon, as well as the plain meaning of the term. And it is also consistent with the context surrounding the term. In addition to prohibiting "us[ing] an electronic amplifying or recording device to eavesdrop," Section 632 also uses the term "device" in providing that the improperly recorded conversations must take place "by means of a telegraph, telephone, or other device, except a radio." "Telegraph" and "telephone" are tangible objects, and under the canon of noscitur a sociis, which provides that "a specific item in a statutory list of items is qualified by the overall type or subject matter characterizing the list," *Davis v. Fresno Unified Sch. Dist*., 14 Cal. 5th 671, 689 (2023), "device" should be construed in line with those terms to refer to tangible instruments—not "software code" like Heap. Compl. ¶ 26. Plaintiff's Section 632 claim should therefore be dismissed.

### D. PLAINTIFF'S ILLINOIS EAVESDROPPING ACT CLAIM FAILS

Plaintiff's Eavesdropping Act claim should also be dismissed for failure to adequately allege a violation. The Eavesdropping Act is meant "to protect conversational privacy." *People v. Clark*, 6 N.E.3d 154, 161 ¶ 22 (Ill. 2014). A person violates the Act "when he [] knowingly and intentionally: [i]ntercepts, records or transcribes, in a surreptitious manner, any private electronic communication to which he [] is not a party" without consent. 720 ILCS 5/14-2(a)(3). Plaintiff's Eavesdropping Act claim fails for the same reasons his ECPA and CIPA claims fail. *See Angelo v. Moriarty*, 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016) (holding that "despite Plaintiff's argument that the conversation was private, … because Defendant [] was a party to this conversation, Plaintiff's cannot establish a violation of the Act"); *Bender v. Board of Fire and Police Comm'rs*, 539 N.E.2d 234, 237 (Ill. App. Ct. 1989) (holding that "no eavesdropping occurs

where an individual to whom statements are made or directed records them, even without the knowledge or consent of the person making the statements”).

### E. PLAINTIFF’S INTRUSION UPON SECLUSION CLAIM FAILS

*New York Law.* New York does not recognize intrusion upon seclusion claims. *Howell v. New York Post Co.,* 81 N.Y.2d 115, 123–24, 612 N.E.2d 699, 703–04 (1993).

*Illinois Law.* The common law tort of intrusion upon seclusion requires “(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is highly offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering.” *Jacobson v. CBS Broad., Inc.,* 2014 IL App (1st) 132480, 386 Ill. Dec. 12, 19 N.E.3d 1165, 1180 (Ill. App. Ct. 2014). Plaintiff’s claim fails for multiple reasons.

*First,* examples of inherently private facts include “a person’s financial, medical, or sexual life, or a peculiarly private fact of an intimate[,] personal nature.” *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005) (quoting *Green v. Chicago Tribune Co.*, 286 Ill. App. 3d 1, 18, 675 N.E.2d 249, 260 (1996)). Plaintiff’s allegations do not involve these types of sensitive information. Compl. ¶ 161.

*Second,* Heap simply provides an internet analytics tool to PowerSchool for it to capture the actions taken by users interacting with its platform. Like security cameras and voice recorders, analytics tools help customers improve their website’s users’ experience. This is a routine commercial practice not amounting to a “highly offensive” conduct. *See McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (“courts have characterized the collection and disclosure of [personal information about the users of a technology] as ‘routine commercial behavior’”) (citation omitted); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (“courts in this district have consistently refused to characterize the disclosure of

common, basic digital information to third parties as serious or egregious violations of social norms"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of digital identification information such as users' browsing histories does not establish a common law claim for invasion of privacy). The Complaint does not aver that either PowerSchool or Heap use Plaintiff's information for improper purposes or any other highly offensive conduct.

*Third*, Plaintiff alleges, "[a]s a direct and proximate result of the above acts of Defendant Heap, Plaintiff and Nationwide Class Members and Naviance Subclass Members sustained injuries, damages and anguish and otherwise suffered." Compl. ¶ 167. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Plaintiff does not provide facts to support his allegation he experienced "anguish and suffering," his intrusion of privacy claim should be dismissed.

## V. ALTERNATIVELY, THIS ACTION SHOULD BE STAYED PENDING AT THE MINIMUM, ISSUANCE OF A CLASS CERTIFICATION DECISION IN THE PARALLEL ACTION

To the extent the Court denies all or part of Heap's motion to dismiss, Heap requests, in the alternative, that the Court stay this matter. '[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.' *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (citation omitted.) The decision to issue a stay is "firmly within a district court's discretion." *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). Courts "must weigh competing interests and maintain an even balance." *Louis Vuitton*, 676 F.3d at 97; *see also Ofosu v. McElroy*, 98 F.3d 694, 699 (2d Cir. 1996) ("A request for a stay is an appeal to equity.").

On August 18, 2023, plaintiff Q.J., a minor, through his parent and legal guardian, J.J., brought a putative class action suit against PowerSchool , Heap, and other defendants. *Q.J. Action*,

Case No. 1:23-cv-05689, N.D. Illinois. Plaintiff Q.J. is represented by the same counsel as *I.J.* Q.J. asserted claims for violations of various wiretapping statutes at issue here. Heap moved to dismiss for lack of personal jurisdiction. The parties agreed to stay briefing and conduct jurisdictional discovery. After a year of written discovery and depositions, plaintiff filed the First Amended Complaint on January 13, 2025. Defendants moved to dismiss. Dkt. Nos. 129-130, 134-137.

On August 20, 2025, the Northern District of Illinois permitted this substantially similar putative class action complaint to proceed against PowerSchool, its predecessor Hobsons, and the Board of Education of the City of Chicago, but dismissed Heap for lack of personal jurisdiction. *Q.J. Action*, Dkt. No. 178. Plaintiff moved for reconsideration, which Heap opposes. Dkt. Nos. 183 and 188. This action should be stayed at least until class certification has been resolved in the first-filed *Q.J.* action.

Plaintiff I.J. – who would be a member of the putative *Q.J.* class – filed this action almost over two years after *Q.J.*, lodging substantially similar factual allegations against Heap. In the Second Circuit, that supports application of the first-filed rule and a stay.

### A. The Efficiency and Avoidance of Duplicative and Inconsistent Rulings Mandate a Stay of the Second Filed Suit

The Second Circuit has long recognized that "where there are two competing lawsuits, the first suit should have priority." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)). Absent "special circumstances" or a showing that the "balance of convenience" favors the second action, the first-filed suit controls due to "considerations of judicial administration and conservation of resources by avoiding duplicative litigation." *Id.* (internal quotations omitted). The rule also promotes comity between federal district courts and "ensures that parties remain 'free from the vexation of concurrent litigation over the same subject matter.'" *U.S. ex rel. Cestra v.*

*Cephalon, Inc.*, 2014 WL 1087960, at *4 (S.D.N.Y. Mar. 19, 2014) (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)). There is a "strong presumption in favor of the first-filed suit," *IT Source, LLC v. Yash Techs., Inc.*, 2007 WL 9753188, at *3 (D. Conn. Dec. 19, 2007), and departure from the rule can constitute an abuse of discretion. *Emps. Ins. of Wausau*, 522 F.3d at 276. The rule embraces substance over form: the cases need not be identical, only "substantially similar" in parties and claims. *Andreas-Moses v. Hartford Fire Ins. Co*., 2017 WL 5634709, at *2 (N.D.N.Y. Oct. 30, 2017), *report and recommendation adopted*, 2017 WL 5634613 (N.D.N.Y. Nov. 22, 2017). That test is easily met here, and this action should therefore be stayed.

***1. The Parties are Similar.***

The parties on both sides of the "v." in *Q.J.* and this case are substantially similar. Although Heap currently is dismissed from *Q.J*, plaintiff's motion for reconsideration remains pending . *Q.J. Action,* Dkt Nos. 183 and 188. The presence of additional defendants in *Q.J.* does not defeat similarity. *See, e.g., IT Source, LLC*, 2007 WL 9753188, at *3 (applying the first-filed rule when the cases had different defendants); *Timberland Machs. & Irrigation, Inc. v. Echo, Inc.*, 2009 WL 996044, at *2 (D. Conn. Apr. 13, 2009) (applying the first-filed rule when one case had fewer defendants); *Oleg Cassini, Inc. v. Serta, Inc*., 2012 WL 844284, at *4 (S.D.N.Y. Mar. 13, 2012) (applying the first-filed rule when one case had "several additional defendants"). Even if Heap remains dismissed, the overlap in claims warrants application of the rule.

There is substantial similarity on the plaintiff side. Courts consider whether proposed classes substantially overlap, even if represented by different individuals. *Tate-Small v. Saks Inc.*, 2012 WL 1957709, at *3 (S.D.N.Y. May 31, 2012) ("The proposed classes … are substantially similar in that both classes seek to represent at least some of the same individuals.") (quoting *Adoma v. Univ. of Phoenix, Inc*., 711 F. Supp. 2d 1142, 1148 (E.D. Cal. 2010)); *see also Bukhari v. Deloitte & Touche LLP*, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012) (applying the first-

filed rule to "class action suits filed by different plaintiff classes against the same defendant."); *Andreas-Moses*, 2017 WL 5634709, at *3-4 (same). Moreover, the class in the first-filed case need not yet have been certified; it is enough that the putative classes overlap. *See Santana v. Cavalry Portfolio Servs., LLC*, 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019); *Burke v. Bimbo Bakeries USA, Inc*., 2019 WL 6068038, at *1-2 (N.D.N.Y. Nov. 15, 2019); *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 403-04 (E.D.N.Y. 2013) (comparing a putative class to a class that had been only "conditionally certified").

Here, both complaints are asserting on behalf of nearly identical nationwide classes of students whose communications were allegedly intercepted through Hobsons/PowerSchool platforms integrated with Heap's analytics software. Compare *Q.J.*, Dkt. No. 119 ¶¶ 177–78 with *I.J.*, Dkt. No. 1 ¶¶ 89–90. Common sense dictates that there is little daylight between the classes. Importantly, Plaintiff I.J. admits he "was, and remains, a putative class member in the N.D. Ill. Class Action." *I.J.*, Compl. ¶ 88.

### *2. The Issues Are Substantially Similar, If Not Identical.*

The Court can readily find that the issues in *Q.J.* and here are substantially similar because the first-filed analysis looks to whether the claims "arise from the same nucleus of fact." *Hilb Rogal & Hobbs Co. v. MacGinnitie*, 2005 WL 441509, at *4 (D. Conn. Feb. 14, 2005); see also *Oleg Cassini*, 2012 WL 844284, at *3 (holding that the first-filed Illinois suit had priority even though the issues were not identical); *Byron v. Genovese Drug Stores, Inc.*, 2011 WL 4962499, at *3 (E.D.N.Y. Oct. 14, 2011); *Arch Ins. Co. v. Centerplan Constr. Co.*, 2017 WL 5184440, at *1 (D. Conn. Nov. 8, 2017); *IT Source, LLC*, 2007 WL 9753188, at *4.

Both complaints rely on the same factual allegations: Heap is a software-as-a-service provider offering Autocapture code that allows website operators to collect user data. *Q.J.*, Dkt. No. 119 ¶¶ 27, 115–16, 121; *I.J.*, Dkt. No. 1 ¶¶ 13, 62–63, 68. Plaintiffs allege PowerSchool

embedded Heap's code into Naviance, resulting in the interception of confidential student communications and data. *Q.J.*, Dkt. No. 119 ¶¶ 208–09; *I.J.*, Dkt. No. 1 ¶ 118.

The statutory claims are identical. *Q.J.*, Dkt. Nos. 119, 178; *I.J.*, Dkt. No. 1. Although this case was filed in New York, both plaintiffs are Illinois residents, so their intrusion-upon-seclusion claims are governed by Illinois law. *Q.J.*, Dkt. No. 119 ¶ 10; *I.J.*, Dkt. No. 1 ¶ 9.

If the Northern District of Illinois certifies the class in *Q.J.*, impermissible claim splitting arises. Plaintiff I.J. would be a member of all classes alleged in *Q.J.* yet simultaneously pursue a duplicate action here based on the same alleged wrongdoing. This is precisely what the claim-splitting doctrine prohibits: prosecuting a case in piecemeal fashion. *Salib v. I.C. Sys., Inc.*, 2002 WL 31060368, at *2 (D. Conn. July 24, 2002). Courts routinely apply the doctrine to bar duplicative suits sounding in different causes of action. *See, e.g., Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48–49 (2d Cir. 2013); *Cowan v. Ernest Codelia, PC*, 149 F. Supp. 2d 67, 74 (S.D.N.Y. 2001); *Keaton v. Dep't of Rehab. Servs.*, 2018 WL 3677899, at *1, *3 (D. Conn. Aug. 2, 2018); *Curcio v. Hartford Fin. Servs. Grp.*, 472 F. Supp. 2d 239, 241, 243–44 (D. Conn. 2007). As both actions arise from the same nucleus of operative fact, the wiser course is to stay this case under the first-filed rule pending class certification in *Q.J.*.

#### ***3. No Exception to the First Filed Rule Applies.***

The first-filed rule creates a "strong presumption in favor of the first-filed suit, [and therefore] the plaintiff bears a heavy burden of demonstrating that a sound reason exists that would make it unjust or inefficient" to apply the rule. *IT Source, LLC*, 2007 WL 9753188, a *3. The Second Circuit "recognize[s] only two exceptions to the first-filed rule: (1) where the balance of convenience favors the second-filed action, . . . and (2) where special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau,* 522 F.3d at 275-76 (internal quotations and citations omitted).

The "balance of convenience" exception is not germane here, where Defendant seeks only to stay this action until such time as the *Q.J.* court rules on class certification. Once that ruling has been made, this Court could consider if and how to proceed with the present *I.J.* case. But even if the Court considers the balance of convenience, the relevant factors do not weigh in favor of allowing the second-filed action to proceed. *See id.* at 275 (factors in assessing balance of convenience exception include, ("(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."). Plaintiffs in both actions are residents of Illinois, allege identical causes of action based on the same factual allegations regarding PowerSchool's implementation of Heap's software code. Nothing has happened in New York besides the fact that Content Square, which acquired Heap, has its principal place of business in New York. *I.J.*, Dkt. No. 1, ¶ 11. Indeed, I.J presumably only filed this suit in the Southern District of New York so that he could be assured of personal jurisdiction over Heap.[3] If this second-filed case proceeds, it will allow Plaintiffs' counsel to engage in forum-shopping and/or to drive up litigation defense costs for Defendant in hopes of leveraging a higher settlement offer. Such tactics do not warrant disregard of the first-filed rule.

[3] The choice of forum factor is "diminished substantially [because] plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *see also Humble Surgical Hosp., LLC v. Aetna Life Ins. Co.,* 2014 WL 12768253, at *11 (D. Conn. Sept. 30, 2014). In fact, I.J. could have filed the suit in the district court in California, where Heap was headquartered at relevant times. I.J., Dkt. No. 1, ¶ 12. But plaintiff's counsel did not do so because there is another pending litigation against PowerSchool pending in the Northern District of California, Case No. 3:24-cv-02706-JD, in which Q.J. sought to intervene or transfer under the first-to-file rule. Dkt. No. 68. The court denied that motion. Dkt. No. 79.

The special circumstances exception is similarly inapplicable. Indeed, this case does not present either of the two "quite rare" circumstances the Second Circuit has identified as justifying departure from the first-filed rule: when the first-lawsuit was an "improper anticipatory . . . action" or "where forum shopping alone motivated the choice of the situs for the first suit." *Emps. Ins. of Wausau,* 522 F.3d at 275-76 (internal quotations omitted). Because Heap did not file either suit, it could not have engaged in bad faith filing or brought an anticipatory suit. Similarly, Plaintiff cannot claim forum shopping, as Plaintiffs Q.J. and I.J.—not Heap—chose the forums. The first-filed rule promotes "judicial administration and conservation of resources by avoiding duplicative litigation." *Id.* at 275 (internal quotations omitted).

Federal Rule of Civil Procedure Rule 23 is designed to streamline cases where there are numerous individuals affected by the same allegedly wrongful conduct. Here, both Q.J. and I.J. assert the same material allegations. The class action device is meant to simplify litigation involving large numbers of individuals with similar claims and encourage uniform decision for the claims. Indeed, class actions are designed to provide some of the following benefits: 1) saving resources by permitting litigation of multiple, related claims more efficiently and economically than individual lawsuits; 2) providing a group remedy for plaintiffs without the cost and delay of multiple separate lawsuits; and 3) providing defendants with a single determination of the merits of the claims, which will bind many individuals within one lawsuit, thereby protecting defendants from repeated litigation and potentially inconsistent judgments. *Richard K. v. Utd. BeHavioral Health*, 2019 WL 3083019, at *8 (S.D.N.Y. June 28, 2019) (citing 1 Newberg on Class Actions § 1:9 (5th ed.)).

Here, consideration of the first-filed rule, alongside the underlying tenets of Rule 23, make plain that there is no reason to have two separate class actions for nearly identical claims. As

discussed above, the putative classes in both this action and the *Q.J.* action are substantially overlapping, if not nearly identical. The alleged wrongdoing is the same and the relief sought in both classes is the same. Thus, the underlying purpose of Rule 23 also supports the stay. For the reasons above and for efficiency's sake, this case should be stayed pending a ruling by the *Q.J.* court on class certification.

### B. TAILORED STAY WITH STATUS REPORTING ENSURES ONGOING OVERSIGHT

To the extent the Court has any concern about delay, Heap proposes that the stay include periodic joint status reports every 90 days and that the parties promptly notify the Court of any material developments in the Parallel Action. This tailored approach preserves efficiency while maintaining oversight.

## VI. DISCOVERY SHOULD BE STAYED

Under Federal Rule of Civil Procedure 26(c), a court has "considerable discretion" to stay discovery for good cause. *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009). Relevant factors include: "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Miller v. Brightstar Asia, Ltd.*, 2020 WL 7483945, at *2 (S.D.N.Y. Dec. 21, 2020). The party seeking a stay bears the burden of demonstrating good cause. *Id.*

All three factors are present here. First, as demonstrated by Heap's motion to dismiss, Plaintiff's complaint is patently insufficient. Second, this is a putative class action which—if the proceedings in the Illinois *Q.J.* Action are any indication—will involve broad, burdensome discovery and extensive motion practice. See *Q.J. Action*, Dkt. Nos. 59, 64, 67–69, 71–72, 80–81,

88, 93, 102–106. Third, Plaintiff will not suffer unfair prejudice, as discovery is already proceeding in the related *Q.J.* Action, where substantial discovery has already been obtained from Heap.

Courts in this District have long recognized that "a motion to stay discovery pending the determination of a dispositive motion is an appropriate exercise of a court's discretion and should be granted when, as here, the pending motion appear[s] to have substantial grounds… and adjudication of the motion is likely to result in a speedy dismissal, which would obviate the need for costly and time-consuming discovery." *Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002); *Avnet, Inc. v. Am. Motorists Ins. Co.*, 115 F.R.D. 588, 592 (S.D.N.Y. 1987). Most recently, Judge Vyskocil upheld a magistrate judge's order granting such a stay in *Loiacono v. Allied Partners Mgmt. LLC*, 2025 WL 3089176 (S.D.N.Y. Nov. 5, 2025), and Judge Engelmayer did the same in *Gastineau v. ESPN Inc.*, 2025 WL 2733155 (S.D.N.Y. Sept. 24, 2025).

## VII. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Class Action Complaint in its entirety, or in the alternative, should stay this action pending the resolution of the parallel action and stay discovery pending adjudication of this motion.

Dated: November 26, 2025

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: ***/s/ Josh M. Kantrow***

Josh M. Kantrow, Esq. (*Pro Hac Vice*)
550 West Adams Street, Suite 300
Chicago, IL 60661
312.345.1718
Josh.Kantrow@lewisbrisbois.com

Peter T. Shapiro
7 World Trade Center, 11th Floor
New York, NY 10007
212.232.1300
Peter.Shapiro@lewisbrisbois.com
*Attorneys for Defendant*

**CERTIFICATION AS TO WORD COUNT**

I hereby certify that this document was prepared on a computer using Microsoft Word using a proportionally spaced typeface, as follows:

| | |
|---|---|
| Name of Typeface: | Times New Roman |
| Point size: | 12 point |
| Line spacing: | 2 |

The total number of words in this document, excluding the caption and signature block, and any Table of Contents or Table of Authorities, as calculated by the word processing program used to prepare the document is: 8,103.

Dated: New York, New York
November 26, 2025

/s/ Peter T. Shapiro
Peter T. Shapiro

**CERTIFICATE OF SERVICE**

Peter T. Shapiro, an attorney duly admitted to practice before this Court, certifies that on November ____, 2025, he caused to be filed via ECF the Memorandum of Law in support of Defendants' Motion to Dismiss.

/s/ Peter T. Shapiro
Peter T. Shapiro