IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

I.J., individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

HEAP INC., now known as CONTENT SQUARE, INC.,

Defendant.

Case No. 1:25-cv-07583-JLR

Judge Jennifer L. Rochon

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT, OR IN THE ALTERNATIVE, FOR A STAY**

SCOTT R. DRURY (*admitted pro hac vice*)
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
Email: scott@drurylegal.com

JOSHUA D. ARISOHN
**ARISOHN LLC**
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ..... iii

**INTRODUCTION** ..... 1

**FACTUAL BACKGROUND** ..... 2

Defendant's Wiretapping and Eavesdropping Technology ..... 2

Defendant Intercepted Plaintiff's Communications ..... 3

Procedural History ..... 4

**ARGUMENT** ..... 5

I. Plaintiff Has Article III Standing. ..... 5

A. Legal Standards ..... 5

B. Plaintiff Has Alleged the Intangible Harm of Disclosure of Private Facts ..... 6

C. Plaintiff Has Alleged the Intangible Harm of Intrusion Upon Seclusion ..... 6

D. Defendant Fails to Cite Adverse Controlling Authority and Ignores Plaintiff's Allegations ..... 8

II. The Court Should Deny Defendant's Motion to Dismiss ..... 9

A. Legal Standards. ..... 9

B. Plaintiff Sufficiently Alleges ECPA Violations ..... 9

1. Defendant Was Not a Party to the Communications ..... 9

2. The ECPA's Crime-Tort Exception Applies ..... 12

3. Plaintiff's ECPA Claim Is Not Time Barred ..... 14

a. The *Q.J. Action* Tolled the Statute of Limitations ..... 14

b. Plaintiff's Minor Status Tolled the Limitations Period. ..... 15

C. Plaintiff Sufficiently Alleges CIPA Violations. ..... 16

1. Plaintiff May Bring His CIPA Claims ..... 16

2. Defendant Was Not a Party to the Communications ....18

3. Plaintiff Sufficiently Alleges "In-Transit" Interceptions ....18

4. Defendant's Data Analytics Platform Is a "Device" ....20

D. Plaintiff Sufficiently Alleges IEA Violations ....20

E. Plaintiff Sufficiently Alleges Intrusion Upon Seclusion ....22

III. The Court Should Not Stay This Action Under the First-Filed Rule ....24

A. Legal Standards. ....24

B. There Are No Competing Actions ....25

C. Only This Court Can Definitively Exercise Jurisdiction Over Defendant ....27

D. The Balance of Convenience Favors This Action ....27

**CONCLUSION** ....29

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Scott Labor LLC*, 377 F.Supp.2d 647 (N.D. Ill. 2005)....23

*Adams v. PSP Grp., LLC*, 691 F.Supp.3d 1031 (E.D. Mo. 2023) ....9

*Ahringer v. LoanDepot,Inc.*,
715 F.Supp.3d 1274 (C.D. Cal. 2024) ....11, 18

*Albright v. Terraform Labs, Pte. Ltd.*, 641 F.Supp.3d 48 (S.D.N.Y. 2022) ....25, 29

*American Federation of Gov't Employees AFL-CIO v. U.S. Office of Personnel Mgmt.*, 777 F.Supp.3d 253 (S.D.N.Y. 2025) ....7

*American Pipe and Const. Co. v. Utah*, 414 U.S. 538 (1974) ....14

*Angelo v. Moriarty*, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016)....21

*Augustine v. Lenovo (United States)*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ....11

*Bender v. Bd. of Fire & Police Comm'rs.*, 539 N.E.2d 234 (Ill. App. Ct. 1989) ....21

*Betances v. Fisher*, 403 F.Supp.3d 212 (S.D.N.Y. 2019),
*vacated on other grounds,* 2024 WL 182044 (S.D.N.Y. Jan. 17, 2024) ....14

*Betances v. Fisher*, 2024 WL 38448485 (S.D.N.Y. Aug. 16, 2024) ....14

*Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276 (2d Cir. 2023)....6

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016)....17

*Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023)....22

*Burrow v. Sybaris Clubs Int'l, Inc.*, 2013 WL 5967333 (N.D. Ill. Nov. 8, 2013) ....23

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010)....7, 9, 10, 12

*Carrese v. Yes Online, Inc.*, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016)....17

*Catholic Social Svcs. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000)....14, 15

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025)....17

*China Agritech v. Michael H. Resh*, 584 U.S. 732 (2018)............................................................14

*Citibank, N.A. v. Hello Flatbush LLC*,
2025 WL 2370888 (S.D.N.Y. Aug. 14, 2025)............................................................9, 21

*Cody v. Ring LLC*, 718 F.Supp.3d 993 (N.D. Cal. 2024) ............................................................12

*Cohen v. Casper Sleep, Inc.*, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)..................................13

*Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y. 1977).............24, 25, 27

*Cook v. GameStop, Inc.*, 689 F.Supp.3d 58 (W.D. Pa. 2023),
*aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) ..................................................................9

*Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) ............................................................14

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ............................11

*DellaSala v. Samba TV, Inc.*, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ................................18

*Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......................19

*Employers Ins. of Wasau v. Fox Ent't Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008).........................................................................................24

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) ...........................................24, 28

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) .......................................................17

*Frasco v. Flo Health, Inc.*, 2025 WL 1476905 (N.D. Cal. May 22, 2025) ..................................19

*Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ................................22

*Gladstone v. Amazon Web Svcs. Inc.*, 739 F.Supp.3d 846 (W.D. Wash. 2024) ............................20

*Graham v. Noom, Inc.*, 533 F.Supp.3d 823 (N.D. Cal. 2021) .......................................................12

*Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007 (C.D. Cal. 2023).................................12

*In re DoubleClick Inc. Privacy Litig*, 154 F.Supp.2d 497 (S.D.N.Y. 2001).................................13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .........................................................................................10

*In re: Google Inc. Gmail Litig.*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)...........................17

*In re Google, Inc. Priv. Policy Litig.*, 58 F.Supp.3d 968 (N.D. Cal. 2014)....................................23

*Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891 (N.D. Cal. 2023) .......................................11, 12

*Kisil v. Illuminate Education, Inc.*, 2025 WL 2589000 (9th Cir. Sept. 8, 2025)............................8

*Kreek v. Wells Fargo & Co.*, 652 F.Supp.2d 1053 (N.D. Cal. 2009) ...........................................15

*Lawlor v. North American Corp. of Ill.*, 983 N.E.2d 414 (Ill. 2012)............................................22

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
534 N.E.2d 987 (Ill. 1989)...........................................................................................................22

*M.D. v. Southington Bd. of Educ.*, 334 F.3d 217 (2d Cir. 2003) ...........................................15, 16

*McMorris v. Carlos Lopez and Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021) ..................................9

*Melito v. Experian Marketing Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) ...........................................7

*Mione v. McGrath*, 435 F.Supp.2d 266 (S.D.N.Y. 2006)..............................................................15

*Moore v. U.S. Postal Svc.*, 159 Fed. App'x 265 (2d Cir. 2005) ...............................................9, 21

*Nixon v. Pond5, Inc.*, 2025 WL 2030303 (S.D.N.Y. July 21, 2025) ..............................................6

*Pattison v. Teladoc Health, Inc.*,
2025 WL 1756364 (S.D.N.Y. June 25, 2025) .......................................................................12, 13

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ..................................................................9

*Q.J. v. PowerSchool Holdings LLC*,
2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ........................................................................ *passim*

*Quinn v. Walgreen Co.*, 958 F.Supp.2d 533 (S.D.N.Y. 2013)......................................................24

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)...........................11

*Ribas v. Clark*, 696 P.2d 637 (Cal. 1985)........................................................................................11

*St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675 (Oct. 1, 2024) ...........................18, 19

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ...............................................5, 6

*Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732 (N.D. Cal. 2023).............................................12

*Tanner v. Acushnet Co.*, 2023 WL 8152104 (C.D. Cal. November 20, 2023) .......... 19

*Tate v. VITAS Healthcare Corp.*, 762 F.Supp.3d 949 (E.D. Cal. 2025) .......... 20

*Torres v. Prudential Fin'l, Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 11, 19

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 5, 6

*Turner v. Nuance Comm'ns, Inc.,* 735 F.Supp.3d 1169 (N.D. Cal. 2024) .......... 11

*United States v. Hutchins*, 361 F.Supp.3d 779, 795 (E.D. Wis. 2019) .......... 20

*Valentine v. NebuAd, Inc.*, 804 F.Supp.2d 1022 (N.D. Cal. 2011) .......... 17

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. 2023) .......... 11, 12

*Vasil v. Kiip*, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018) .......... 21

*Vinluan v. Ardsley Union Free School Dist.*,
2021 WL 1063482 (S.D.N.Y. Mar. 18, 2021) .......... 16

*Wiley v. Universal Music Grp.*, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 22

*Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 8

*Yockey v. Salesforce, Inc.*, 688 F.Supp.3d 962 (N.D. Cal. 2023) .......... 12

*Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073 (C.D. Cal. 2021) .......... 11

*Zboralski v. Monahan*, 446 F.Supp.2d 879 (N.D. Ill. 2006) .......... 22

## STATUTES

### ***Federal***

18 U.S.C. § 2511(1)(a) .......... 1

18 U.S.C. § 2511(2)(d) .......... 12

18 U.S.C. § 2520 .......... 15

20 U.S.C. § 1232g .......... 2

### *State*


105 Ill. Comp. Stat. 10/1 ....................2

105 Ill. Comp. Stat. 10/9(a) ....................13

105 Ill. Comp. Stat. 10/9(b) ....................13

105 Ill. Comp. Stat. 10/9(e) ....................13

720 Ill. Comp. Stat. 5/14-1....................1

720 Ill. Comp. Stat. 5/14-4(a) ....................13

720 Ill. Comp. State 5/14-6....................13

735 Ill. Comp. Stat. 5/13-211....................16

Cal. Code Civ. P. 352(a) ....................16

Cal. Fam. Code § 6502 ....................16

Cal. Penal Code § 631....................1, 13, 18

Cal. Penal Code § 632....................1

Cal. Penal Code § 637.2....................13, 17


## RULES


Fed. R. Civ. P. 54(b) ....................15

N.Y. C.P.L.R. § 105....................16

N.Y. C.P.L.R. § 208....................16

N.Y. R. Prof. Conduct 3.3(a)(2)....................8


## OTHER AUTHORITIES


34 C.F.R. § 99.63 ....................13

Restatement (Second) of Torts § 652B (Am. L. Inst. 1977)....................6, 7

## INTRODUCTION

This case arises out of the egregious wiretapping of, and eavesdropping upon, school students—including Plaintiff I.J. and class members—by Defendant Heap Inc., now known as Content Square, Inc. ("Defendant" or "Heap"), while the students used mandated education technology products offered by PowerSchool Holdings LLC and Hobsons, Inc. (collectively, "PowerSchool"). Unbeknownst to the students, PowerSchool integrated Defendant's wiretapping and eavesdropping software into its products. As described by Defendant, its software provided PowerSchool with the "easiest and most comprehensive way to automatically capture the user interactions on your site, from the moment of installation forward. ***A single snippet grabs every click, swipe, tap, pageview, and fill—forever.*** **"** Dkt. 1 ¶ 63 (emphasis in original).

In his Complaint, Plaintiff alleges: (a) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a); (b) violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631-32; (c) violations of the Illinois Eavesdropping Act ("IEA"), 720 Ill. Comp. Stat. 5/14-1, *et seq.*; and (d) intrusion upon seclusion. Defendant has moved to dismiss the Complaint claiming Plaintiff lacks Article III standing and otherwise fails to state a claim. Alternatively, Defendant seeks to stay this case based on the first-filed rule. The Court should deny Defendant's motion.

Contrary to Defendant's contention, Plaintiff has sufficiently alleged: (a) he suffered an injury in fact; and (b) each of his claims. Defendant reaches a contrary conclusion only by ignoring the facts and the law.

Further, contrary to Defendant's contention, the first-filed rule does not apply here because there is no first-filed competing action. Indeed, Defendant has been dismissed from the action it tries to frame as competing. Even if there were a competing action, the Court should disregard the

first-filed rule because: (a) special circumstances and the equities negate any presumption in favor of litigating in a first-filed forum; and (b) the balance of convenience weighs in favor of litigating in this Court. With respect to (a), this is the only Court where personal jurisdiction over Defendant is not an issue.

## FACTUAL BACKGROUND

***Defendant's Wiretapping and Eavesdropping Technology***

Plaintiff alleges Defendant surreptitiously—and without consent—intercepted and collected students' confidential communications while they used PowerSchool's education technology products, including a product known as Naviance. Dkt. 1 ¶¶ 3-4. Among the communications Defendant intercepted were education and school student records protected from such interception by the: (a) Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; and (b) Illinois School Student Records Act ("ISSRA"), 105 Ill. Comp. Stat. 10/1, *et seq.* *See id.* ¶¶ 3, 18-30, 37-39, 47-48, 67, 84, 112, 129, 139, 161. Defendant intercepted the confidential communications on an individualized and personally identifiable basis and tracked the students across different domains:

> 69. At relevant times, PowerSchool Holdings LLC and Hobsons, Inc., with Defendant's knowledge and assistance, configured Defendant's data analytics platform so that it would track Naviance users on an individualized basis, even if the users logged into Naviance with different devices. By doing so, Defendant was able to individually identify the Naviance users and track them across different domains.
>
> 70. Moreover, Defendant, through its data analytics platform, intercepted identification numbers that uniquely identified each Naviance user, including Plaintiff and Class Members, which provided Defendant with one way, among others, to identify and track unique users.

*Id.* ¶¶ 69-70; *see also id.* ¶ 71.

Defendant accomplished its wiretapping and eavesdropping through a data analytics platform it provided to website operators, including PowerSchool. *See id.* ¶¶ 13-14, 60-71. That platform provided website operators with the "'easiest and most comprehensive way to automatically capture the user interactions on your site, from the moment of installation forward. ***A single snippet grabs every click, swipe, tap, pageview, and fill— forever.'"*** *Id.* ¶ 63 (emphasis in original). According to Defendant, its technology "'collect[s] everything, automatically.'" *Id.* ¶ 64. Indeed, once integrated into a website, Defendant's technology: (a) allowed Defendant to "surreptitiously intercept in real-time the communications of website users; and (b) contemporaneously transmit[] that information and data to Defendant's servers." *Id.* ¶ 65. Defendant knew that "when it work[ed] with education technology providers like PowerSchool . . . , the integration and embedding of its data analytics platform into the customers' websites resulted in Defendant's interception of sensitive and confidential student information, including education and school student records and the information contained therein." *Id.* ¶ 67.

Defendant's data analytics platform was "not akin to a tape recorder or a 'tool' used by one party to simply record the other." *Id.* ¶ 72. Rather, the platform allowed Defendant to "eavesdrop on, record, extract information from, and analyze a conversation to which it [was] not a party," before providing it to the entity that was a party to the conversation (such as PowerSchool). *Id.* Once Defendant intercepted communications, it had (and has) the ability to use the information for its own purposes, including business and commercial purposes such as "improving, testing, operating, promoting and marketing Defendant's products and services." *See id.* ¶¶ 72-73.

***Defendant Intercepted Plaintiff's Communications***

At relevant times, Plaintiff was a minor enrolled at various schools operated by the Board of Education of the City of Chicago, where he was required to use Naviance. *See id.* ¶¶ 9, 162,

180. Plaintiff had a reasonable expectation of privacy with respect to his communications via Naviance because, *inter alia*, those communications contained sensitive and confidential education and school student records. *See id.* ¶¶ 47-48; *see also id.* ¶¶ 49-59 (expectation of privacy allegations). Unbeknownst to Plaintiff, his communications within Naviance were intercepted by, and contemporaneously transmitted to, Defendant's servers in California. *See id.* ¶¶ 86, 131, 141. Plaintiff did not consent to the interceptions. *Id.* ¶¶ 7, 116, 128, 155.

***Procedural History***

Before Plaintiff filed this action, Heap had been one of numerous defendants (including PowerSchool) named in *Q.J. v. PowerSchool Holdings LLC*, No. 1:23-cv-05689 (N.D. Ill.) (the "*Q.J. Action*"). *See Q.J. v. PowerSchool Holdings LLC* ("*Q.J.*"), 2025 WL 2410472, at *1 (N.D. Ill. Aug. 20, 2025). The plaintiff in the *Q.J. Action* alleged violations of, *inter alia*, the ECPA, CIPA and IEA, based on Defendant's and PowerSchool's unlawful wiretapping of, and eavesdropping upon, the plaintiff and class members. *See id.*

On August 20, 2025, the court in the *Q.J. Action* granted Defendant's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction.[1] *See id.* at *1-5. In the same opinion, the court denied the other defendants' motions to dismiss the ECPA, CIPA and IEA claims, among other claims. In so doing, the court held that the plaintiff had sufficiently alleged that Heap was not a party to the communications between the students and PowerSchool. *Id.* at *8. Further, the court held that the defendants' claims that the plaintiff sought to improperly apply the CIPA and IEA extraterritorially were premature. *Id.* at 9 (citing cases).

[1] On September 19, 2025, the plaintiff in the *Q.J. Action* moved for reconsideration of Heap's dismissal. *Q.J. Action* Dkt. 183. The Court has not ruled on the motion.

## ARGUMENT

### I. Plaintiff Has Article III Standing.

#### A. Legal Standards.

There are three Article III standing requirements: (a) the plaintiff must have suffered "'an injury in fact that is concrete, particularized, and actual or imminent'"; (b) the "injury must be traceable to the defendant's challenged conduct"; and (c) "it must be likely that the injury would 'be redressed by judicial relief.'" *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 540 (2d Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). A party invoking federal jurisdiction bears the burden of establishing Article III standing. *See id.* at 541. In ruling on an Article III standing challenge, a court should accept the complaint's material allegations as true and construe those allegations in the plaintiff's favor. *See id.* at 540.

"To allege a concrete harm, a plaintiff must point to a 'close historical or common-law analogue for their asserted injury'" because a court's primary consideration is whether the plaintiff's alleged injury has a close relationship to harm American courts have traditionally recognized as a proper basis for a lawsuit. *Id.* at 541 (quoting *TransUnion*, 594 U.S. at 424). Both traditional tangible harms and intangible harms that are closely related to a traditionally recognized harm can satisfy the concreteness requirement. *Id.*

The disclosure of private information and intrusion upon seclusion constitute intangible harms "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425; *see also Salazar*, 118 F.4th at 541 ("One intangible harm that readily qualifies as concrete is the public disclosure of private facts."). According to the Second Circuit, the exposure of a person's personally identifiable information to unauthorized third parties bears some

relationship to the public disclosure of private facts. *See id.* at 541-42; *see also Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 285 (2d Cir. 2023).

### B. Plaintiff Has Alleged the Intangible Harm of Disclosure of Private Facts.

In *Salazar*, the Second Circuit held that allegations that a plaintiff's "personally identifiable information was exposed to an unauthorized third party" were sufficient to plead a concrete injury. 118 F.4th at 542. Like here, that case involved an arrangement between a website operator and a third party whereby the operator used the third-party's software to surreptitiously disclose website user's confidential information. *See id.*; *see also* Dkt. 1 ¶¶ 68-70 (describing PowerSchool's use and configuration of Defendant's data analytics platform with Heap's knowledge and assistance). In reaching its conclusion, the court considered the fact that the third party could use the information for its own commercial purposes. *See id.* at 543-44; *see also Nixon v. Pond5, Inc.*, 2025 WL 2030303, at *3-4 (S.D.N.Y. July 21, 2025) (applying *Salazar*).

Based on *Salazar*, Plaintiff has sufficiently alleged a concrete injury. As in *Salzar*, Plaintiff alleges that: (a) his personally identifiable, confidential, sensitive and statutorily-protected information was exposed to an unauthorized third party—namely, Heap—based on an arrangement between Heap and PowerSchool; and (b) Heap could use that information for its own purposes, including commercial purposes. *See* Dkt. 1 ¶¶ 18-30, 37-39, 68-70, 73.

### C. Plaintiff Has Alleged the Intangible Harm of Intrusion Upon Seclusion.

In addition to the disclosure of private facts, Plaintiff has alleged the recognized intangible harm of intrusion upon seclusion. *See TransUnion*, 594 U.S. at 425; *see also* Dkt. 1 ¶¶ 157-67 (intrusion upon seclusion); § II.E, *infra* (discussing Plaintiff's intrusion upon seclusion claim). The Restatement (Second) of Torts § 652B describes "intrusion upon seclusion" as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the

> other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (Am. L. Inst. 1977); *see also Melito v. Experian Marketing Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (citing § 652B in connection with Article III analysis). Liability for intrusion upon seclusion arises from the intrusion itself. *See Caro v. Weintraub*, 618 F.3d 94, 101 (2d Cir. 2010).

In *American Federation of Gov't Employees AFL-CIO v. U.S. Office of Personnel Mgmt.*, 777 F.Supp.3d 253 (S.D.N.Y. 2025), the court held that the plaintiff sufficiently alleged concrete harms analogous to intrusion upon seclusion where the government granted individuals associated with the U.S. DOGE Service access to employee records protected by the Privacy Act of 1974. *Id.* at 267-68. The court cited to a long line of cases that "found standing to exist when an unauthorized third party was granted access to a plaintiff's legally protected data, due to the resulting harm's resemblance to intrusion upon seclusion." *Id.* at 269.

Here, Plaintiff alleges that Defendant—an unauthorized third party—obtained access to Plaintiff's legally protected communications – namely, his education and school student records that were protected by the FERPA and ISSRA. Dkt. 1 ¶¶ 3, 18-30, 37-39, 47-48, 67, 84, 112, 129, 139, 161. Given that Plaintiff was a minor performing school-mandated tasks when Defendant surreptitiously intercepted his communications, Defendant's conduct unquestionably was highly offensive to a reasonable person. *See id.* ¶¶ 162-64. These allegations sufficiently allege a concrete injury given the resulting harm's resemblance to intrusion upon seclusion.

### D. Defendant Fails to Cite Adverse Controlling Authority and Ignores Plaintiff's Allegations.

In claiming Plaintiff has not alleged a concrete injury, Defendant fails to cite adverse controlling authority and ignores Plaintiff's allegations.[2] First, Defendant does not cite *Salazar*, despite its controlling nature. *See, generally,* Dkt. 23; *see also* N.Y. R. Prof. Conduct 3.3(a)(2) (requiring citation of adverse controlling authority). Defendant's failure is telling. If Defendant could have addressed *Salazar* in a favorable manner, it would have done so.

Similarly, while Defendant cites to *TransUnion*, it omits the Supreme Court's finding that intrusion upon seclusion constitutes an intangible harm that can give rise to Article III standing. Again, Defendant's omission is telling.

Second, rather than addressing Plaintiff's actual allegations, Defendant attempts to rewrite Plaintiff's Complaint, arguing that: (a) a generic loss of privacy is not a concrete harm; and (b) Plaintiff "identifies nothing private or sensitive accessed by Heap." Dkt. 23 at 14.[3] As discussed above, Plaintiff does not allege a generic loss of privacy, and his Complaint repeatedly discusses the private, sensitive and statutorily-protected nature of the education and school student records Defendant intercepted.

The cases cited by Defendant (*id.*) are distinguishable. Unlike here, *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3-6 (S.D.N.Y. Feb. 13, 2025), involved the interception of an IP address with no viable theory that the interception constituted public disclosure of private facts and no allegations of intrusion upon seclusion. Further, unlike here, *Kisil v. Illuminate Education, Inc.*, 2025 WL 2589000, at *2 (9th Cir. Sept. 8, 2025), involved a data breach with no

[2] Defendant does not argue the other two standing requirements.

[3] Citations to docketed entries other than transcript pages are to the CM/ECF-stamped page numbers.

corresponding identity theft or imminent and substantial risk of identity theft. *See also McMorris v. Carlos Lopez and Assocs., LLC*, 995 F.3d 295, 303-05 (2d Cir. 2021) (data breach with no claim of public disclosure of private facts or intrusion upon seclusion). As for *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), unlike here, the plaintiff did not identify any invasive or otherwise private information collected by the alleged wiretapper. *See also Cook v. GameStop, Inc.*, 689 F.Supp.3d 58, 66 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) (no disclosure of personal or private information); *Adams v. PSP Grp., LLC*, 691 F.Supp.3d 1031, 1041 (E.D. Mo. 2023) (same).

## II. The Court Should Deny Defendant's Motion to Dismiss.

### A. Legal Standards.

In ruling on a motion to dismiss, a court looks to whether the complaint pleads "sufficient facts to make out a plausible claim to relief." *Caro*, 618 F.3d at 97. The court should accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

### B. Plaintiff Sufficiently Alleges ECPA Violations.

#### 1. Defendant Was Not a Party to the Communications.

In a perfunctory and undeveloped manner, Defendant contends it was not a party to the intercepted communications at issue. Dkt. 23 at 15-16. Defendant cites to no Second Circuit authority or case law from courts within the Second Circuit supporting its contention. *See id.* Rather, in a footnote, Defendant cites to a California district court case and incorporates another section of its brief that discusses the CIPA. *See id.* at 16 n.2. Defendant's argument is waived. *See Moore v. U.S. Postal Svc.*, 159 Fed. App'x 265, 268 (2d Cir. 2005); *Citibank, N.A. v. Hello Flatbush LLC*, 2025 WL 2370888, at *7 (S.D.N.Y. Aug. 14, 2025).

Absent waiver, Defendant's contention fails. Under the ECPA, "a party to the conversation is one who takes part" therein. *Caro*, 618 F.3d at 97. In *Caro*, the Second Circuit held that a defendant took part in a conversation where he "was present at the table during the conversation" and "spoke up a few times urging [the plaintiff] to continue." *Id.* (internal quotation marks omitted).

Unlike the defendant in *Caro*, Heap did not take part in Plaintiff's communications via Naviance, as it: (a) was not visible to Plaintiff; and (b) did not speak up in any way. *See, e.g.,* Dkt. 1 ¶¶ 62, 65-66, 72. Rather, Defendant surreptitiously intercepted Plaintiff's communications without consent. *See, e.g., id.* Notably, Plaintiff specifically alleges that Defendant was a "separate and distinct entity from the parties in the conversation" and "was not a party" thereto. *Id.* ¶ 72.

Applying California or Ninth Circuit law, as Defendant advocates (*see* Dkt. 23 at 16 n.2, 20-21), does not change the result. The Ninth Circuit has held that the "Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or an unseen auditor." *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 608 (9th Cir. 2020) (internal quotation marks omitted). It has further held that "permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule." *Id.*

As discussed above, Defendant was an "unseen auditor" that surreptitiously duplicated and forwarded Plaintiff's and class members' information to itself. Again, Defendant was not a party to Plaintiff's conversations.

Defendant's contention that, under California law, it was not a party because it "was merely a tool for PowerSchool" (Dkt. 23 at 16 n.2, 20) fails. To begin, the issue of whether Defendant

was a passive tool for PowerSchool is a "question of fact, best answered after discovery . . . ." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States)*, 2023 WL 4938050, at *3 (S.D. Cal. Aug. 2, 2023).

In all events, CIPA § 631 seeks to: (a) prevent the "simultaneous dissemination [of the contents of a conversation] to an unannounced second auditor, whether that auditor be a person or mechanical device"; and (b) preserve the right of the parties to the conversation to "control the nature and extent of the firsthand dissemination of [their] statements." *Ribas v. Clark*, 696 P.2d 637, 640-41 (Cal. 1985). Under the CIPA, a separate legal entity that offers software-as-a-service ("SaaS")—as opposed to a passive device—and learns the contents of a communication in real time is a third-party wiretapper. *See Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F.Supp.3d 969, 981 (C.D. Cal. 2023); *Ahringer v. LoanDepot, Inc.*, 715 F.Supp.3d 1274, 1281 (C.D. Cal. 2024) (cited by Defendant (Dkt. 23 at 20)); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). Further, a "growing number of district courts" have recognized, a SaaS provider is a third-party wiretapper under CIPA § 631(a) if it has the "capability to use its record of the interaction for any other purpose" beyond merely making the recording. *See Turner v. Nuance Comm'ns, Inc.,* 735 F.Supp.3d 1169, 1183-84 (N.D. Cal. 2024) (cleaned up; citing cases); *see also Torres v. Prudential Fin'l, Inc.*, 2025 WL 1135088, at *4 (N.D. Cal. Apr. 17, 2025) (cited by Defendant (Dkt. 23 at 22)); *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 898-900 (N.D. Cal. 2023).

Here, Defendant is a separate legal entity that learned the contents of communications in real-time. *See* Dkt. 1 ¶¶ 60-64. Moreover, as discussed above, Plaintiff alleges Defendant had the capability to use the intercepted communications for its own purposes. *See id.* ¶¶ 72-73. Critically,

the court in the *Q.J. Action* recently examined this issue and held that, based on the plaintiff's allegations, Heap was not a party to the conversations. *Q.J.*, 2025 v. 2410472, at *8.

Plaintiff's allegations also distinguish this case from the cases cited by Defendant. *See* Dkt. 23 at 20-21 (citing *Cody v. Ring LLC*, 718 F.Supp.3d 993, 1003 (N.D. Cal. 2024) (conclusory allegations insufficient); *Swarts v. Home Depot, Inc.*, 689 F.Supp.3d 732, 746 (N.D. Cal. 2023) (no allegations that third party could use communications for its own purposes); *Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1017 (C.D. Cal. 2023) (same)). Finally, *Graham v. Noom, Inc*., 533 F.Supp.3d 823, 832 (N.D. Cal. 2021) (Dkt. 23 at 21), is "based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant." *Yockey v. Salesforce, Inc.*, 688 F.Supp.3d 962, 972 (N.D. Cal. 2023) (cited by Defendant (Dkt. 23 at 21)); *see also Valenzuela,* 686 F.Supp.3d at 980*; Javier*, 649 F.Supp.3d at 898-900.

**2. The ECPA's Crime-Tort Exception Applies.**

Even if Defendant was a party to Plaintiff's conversations, its conduct still violated the ECPA due to the statute's crime-tort exception. While a party to an intercepted communication is generally not liable under the ECPA, that exception does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or the laws of the United States or of any State" (the "crime-tort exception"). 18 U.S.C. § 2511(2)(d). The crime-tort exception applies where a plaintiff makes sufficient allegations to support an inference that the defendant intercepted the communications for the purpose of committing a criminal or tortious act independent of the act of recording. *Pattison v. Teladoc Health, Inc.*, 2025 WL 1756364, at *2-3 (S.D.N.Y. June 25, 2025); *see also Caro*, 618 F.3d at 100 (defendant's objective must be a tortious or criminal result).

Courts in this District have repeatedly held that allegations that a defendant intercepted communications for the purpose of violating a non-wiretapping statute—such as the Health Insurance Portability and Accountability Act ("HIPAA")—sufficiently plead the crime-tort exception. *See Pattison*, 2025 WL 1756364, at *2-3 (citing cases). Moreover, in the *Q.J. Action*, the court found no distinction between intended violations of the HIPAA and intended violations of the FERPA or other laws protecting student data. *Q.J.*, 2025 WL 2410472, at *6. Accordingly, the court in the *Q.J. Action* held the plaintiff adequately pled the crime-tort exception. *Id.*

Here, Plaintiff has sufficiently alleged Defendant had criminal and tortious purposes at the time of the alleged interceptions, namely to violate the FERPA, ISSRA, CIPA and IEA. *See* Dkt. 1 ¶¶ 67-71 (alleging Defendant's knowledge of the purpose of the intercepted communications). The ISSRA, CIPA and IEA each allow for criminal and civil liability. *See* 105 Ill. Comp. Stat. 10/9(a), (b), (e); Cal. Penal Code §§ 631, 637.2; 720 Ill. Comp. Stat. 5/14-4(a), 5/14-6. The FERPA allows for administrative complaints. *See* 34 C.F.R. § 99.63.

Defendant ignores the long line of cases supporting application of the crime-tort exception in analogous cases and, instead relies on distinguishable cases. *See* Dkt. 23 at 15-18. Unlike here, in *In re DoubleClick Inc. Privacy Litig*, 154 F.Supp.2d 497, 518 (S.D.N.Y. 2001), the plaintiffs failed to allege the defendant was motivated by a criminal or tortious purpose. Further, unlike here, in *Cohen v. Casper Sleep, Inc.*, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018), there were no allegations that the defendant violated the HIPAA, the FERPA or other statutes that courts have found trigger the crime-tort exception.

Defendant's contention that the Complaint "specifically rebuts the existence of any criminal or tortious purpose" (Dkt. 23 at 17) fails to read the Complaint as a whole. Viewed in the light most favorable to Plaintiff, his allegations and the reasonable inferences therefrom,

sufficiently allege that Defendant intercepted the communications at issue for the purpose of committing crimes and torts.[4] *See* Dkt. 1 ¶¶ 67-71.

### 3. Plaintiff's ECPA Claim Is Not Time Barred.

Defendant contends Plaintiff's ECPA claim is time barred because it was filed more than two years after Plaintiff became aware of Defendant's ECPA violations. Dkt. 23 at 18-19. Not so.

#### a. The *Q.J. Action* Tolled the Statute of Limitations.

The filing of a class action complaint tolls the running of the statute of limitations for all purported class members until class certification is denied. *See American Pipe and Const. Co. v. Utah* ("*American Pipe*"), 414 U.S. 538, 552-53 (1974); *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). In the event a court denies class certification, a putative class member may not initiate a new class action beyond the applicable limitations period. *China Agritech v. Michael H. Resh*, 584 U.S. 732, 735-36 (2018). However, where a court has not previously denied class certification, putative class members may initiate a new class action. *Betances v. Fisher*, 403 F.Supp.3d 212, 223-27 (S.D.N.Y. 2019), *vacated on other grounds,* 2024 WL 182044 (S.D.N.Y. Jan. 17, 2024); *see also Betances v. Fisher* ("*Betances II*"), 2024 WL 38448485 (S.D.N.Y. Aug. 16, 2024) (reconsidering *Betances II*). Indeed, in *Catholic Social Svcs. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000), relied on by Defendant (Dkt. 23 at 19), the court allowed the plaintiffs to file a subsequent class action where class certification had not previously been denied. *See id.*at 1149

Here, Plaintiff's ECPA claim is timely because the filing of the *Q.J. Action* in August 2023 tolled the statutes of limitations applicable to the claims of the plaintiff and putative class members

[4] Defendant notes that paragraph 118 of the Complaint does not reference the FERPA or ISSRA. Dkt. 23 at 17-18. However, the Complaint as a whole sufficiently alleges the crime-tort exception. To the extent the Court disagrees, Plaintiff seeks leave to amend to include the FERPA and ISSRA in paragraph 118.

asserted against Defendant at least until the court's dismissal of Defendant in August 2025.[5] Because Plaintiff was (and is) a putative class member in the *Q.J. Action* and did not become aware of Defendant's conduct until July 2023 (Dkt. 1 ¶ 87), and because the ECPA has a two-year limitations period, *see* 18 U.S.C. § 2520(e), that limitations period has not run as to Plaintiff. Moreover, because class certification was not denied in the *Q.J. Action*, Plaintiff has properly commenced a class action against Defendant.

Defendant's contention that Plaintiff was required to initiate this case within two years of July 2023 (*see* Dkt. 23 at 18-19) ignores the law and facts discussed above. Moreover, the cases on which Defendant relies (Dkt. 23 at 19) do not support its position. As discussed above, *Catholic Social Svcs.* supports Plaintiff's ability to bring this class action. In *Kreek v. Wells Fargo & Co.*, 652 F.Supp.2d 1053, 1061 (N.D. Cal. 2009), unlike here, the plaintiffs attempted to certify a class action after class certification had been denied in a previous action.

**b. Plaintiff's Minor Status Tolled the Limitations Period.**

Defendant's statute of limitations argument fails for the separate reason that Plaintiff's minor status tolled the ECPA's limitations period. Federal courts must borrow state equitable tolling rules unless doing so would defeat the goal of the federal statute at issue. *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir. 2003). An equitable tolling rule is one that requires or allows a court to make a narrow exception to the statute of limitations to prevent inequity. *Id.* at 223. In the Second Circuit, courts have borrowed state equitable tolling rules where the expeditious resolution of a dispute was not an expressly-stated goal of the underlying statute. *Compare Mione v. McGrath*, 435 F.Supp.2d 266, 270 (S.D.N.Y. 2006) (equitable tolling in § 1983 action) *with M.D.*, 334 F.3d at 224 (no equitable tolling where express goal of education rights

[5] No final judgment has been entered as to Defendant. *See* Fed. R. Civ. P. 54(b).

statute was swift dispute resolution); *see also Vinluan v. Ardsley Union Free School Dist.*, 2021 WL 1063482, at *8 (S.D.N.Y. Mar. 18, 2021) (distinguishing between access to education and § 1983 disputes).

New York, Illinois and California each has an equitable tolling rule for persons under the age of eighteen. *See* N.Y. C.P.L.R. §§ 105 (defining "infancy"), 208 (tolling statutes of limitations during infancy); 735 Ill. Comp. Stat. 5/13-211 (tolling statutes of limitations for minors); Cal. Code Civ. P. 352(a) (same); *see also* Cal. Fam. Code § 6502 (defining "age of majority"). Because Plaintiff was a minor when he brought this action, and because courts must borrow state equitable tolling rules, any statute of limitations that would have been applicable to Plaintiff was tolled unless doing so would defeat the goal of the statute. *See M.D.*, 334 F.3d at 224.

An ECPA action is more akin to a § 1983 action than an action to enforce a student's right to educational access – *i.e.*, they both involve torts and do not contain an expressly-stated goal of an expeditious resolution of disputes. Just as tolling the statute of limitations for a § 1983 action during a person's infancy does not frustrate the purpose of § 1983, nor does tolling the ECPA's limitations period. Because the ECPA's statute of limitations had not even begun to run when Plaintiff filed this lawsuit, Defendant's contention that Plaintiff's claims are time barred necessarily fails.

### C. Plaintiff Sufficiently Alleges CIPA Violations.

#### 1. Plaintiff May Bring His CIPA Claims.

Defendant argues the Court should dismiss Plaintiff's CIPA claims because Plaintiff: (a) is not a California resident; and (b) was not in California when the alleged CIPA violations occurred. Dkt. 23 at 20. The argument fails.

To begin, Defendant's argument is premature. *See Q.J.*, 2025 WL 2410472, at *9 (extraterritoriality arguments are premature at pleadings stage); *Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *7 (N.D. Cal. Mar. 17, 2025) (same); *In re: Google Inc. Gmail Litig.*, 2013 WL 5423918, at *18-19 (N.D. Cal. Sept. 26, 2013) (rigorous fact-based analysis cannot be performed at motion to dismiss stage) (N.D. Cal. Sept. 26, 2013). Moreover, as to Plaintiff's CIPA § 632 claim, the argument lacks basis. "[N]othing in the plain text of [§ 632] suggests such a geographic limitation." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 587 (N.D. Cal. 2025).

With respect to CIPA § 631, the CIPA allows an action to be brought by "'*[a]ny person* who has been injured by a violation of this chapter . . . against the person who committed the violation . . . .'" *Valentine v. NebuAd, Inc.*, 804 F.Supp.2d 1022, 1027-28 (N.D. Cal. 2011) (quoting Cal. Penal Code § 637.2) (emphasis in original). Thus, a non-California resident may bring a CIPA claim against a California resident where the alleged violations occurred in California. *Valentine*, 804 F.Supp.2d at 1028; *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016). A contrary holding would allow "California residents to violate the CIPA . . . with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach." *NebuAd*, 804 F.Supp.2d at 1028; *see also SourceAmerica*, 2016 WL 3543699, at *6; *Carrese v. Yes Online, Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016).

At relevant times, Defendant was a California resident who read and learned the contents of the communications at issue while being sent from or received at a place within California. Dkt. 1 ¶¶ 12, 126, 131, 141. As such, the CIPA violations occurred in California, *see id.*, and Defendant is liable to non-California residents for its unlawful conduct.

*Ahringer*, relied on by Defendant (Dkt. 23 at 20), misinterpreted *NebuAd* and *SourceAmerica* and is entitled to no weight. The court in *Ahringer* cited to *NebuAd* and

*SourceAmerica* for the proposition that only California residents and non-California residents who were in California at the time of the alleged wrong may seek relief under the CIPA. 715 F.Supp.3d at 1284-85. As discussed above, that is not what *Valentine* and *SourceAmerica* held. *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *3 (N.D. Cal. Oct. 30, 2025), relied on by Defendant (Dkt. 23 at 20), is distinguishable because the defendant in that case did not allege where the injuries took place.

**2. Defendant Was Not Party to the Communications.**

For the reasons discussed in § II.B.1, *supra*, Defendant's argument that, under CIPA, it was not a party to the communications (Dkt. 23 at 20-21) fails.

**3. Plaintiff Sufficiently Alleges "In-Transit" Interceptions.**

Defendant incorrectly contends Plaintiff fails to sufficiently allege that Defendant intercepted his communications while in-transit.[6] *See id.* at 22-23. In relevant part, CIPA § 631(a) establishes liability for:

> Any person . . . who **[a]** willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or **[b]** who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . .

Cal. Penal Code § 631(a) (bracketed letters added). "At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675, at *6 (Oct. 1, 2024). Rather, CIPA plaintiffs need only provide fair notice of when and how they believe the defendant intercepted their communications.

[6] Plaintiff does not contest Defendant's argument that he does not allege telephonic communications. *See* Dkt. 23 at 21-22.

*Id.* Allegations of simultaneous transmission of communications at regular intervals are sufficient to state a wiretapping claim. *See Tanner v. Acushnet Co.*, 2023 WL 8152104, at *5-6 (C.D. Cal. November 20, 2023).

Plaintiff's Complaint provides fair notice of when and how Defendant intercepted his communications, including allegations that Defendant simultaneously intercepted the communications at regular intervals. Dkt. 1 ¶¶ 65 (Defendant intercepted website users' communications in "real-time" and "contemporaneously" transmitted them to Defendant's servers), 66 (interceptions began immediately upon a person visiting a website with Defendant's software); *see also id.* ¶¶ 63-64, 86 126.b. These allegations sufficiently plead the "in-transit" element. *See St. Aubin*, 2024 WL 4369675, at *6.

Ignoring the procedural posture of this case, Defendant cites to summary judgment opinions where the plaintiffs failed to come forward with sufficient evidence to satisfy the in-transit element. *See* Dkt. 23 at 22-23 (citing *Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090, at *7 (N.D. Cal. Oct. 17, 2025) (discussing undisputed evidence); *Torres*, 2025 WL 1135088, at *5-6 (same)). Moreover, unlike Plaintiff's allegations, the evidence in *Torres* did not show that the defendant analyzed, summarized or otherwise interpreted the plaintiff's data. *Compare* Dkt. 1 ¶¶ 72-73 *with Torres*, 2025 WL 1135088, at *6. Finally, to the extent, *Eating Recover Ctr.* stands for the proposition that the "in-transit" element can never be satisfied in this type of case, the case was wrongly decided—as the court openly acknowledged was a possibility. *See* 2025 WL 2971090, at *4 (ruling *without* confidence); *see also Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (denying summary judgement – factual questions regarding in-transit element); *St. Aubin*, 2024 WL 4369675, at *6.

**4. Defendant's Data Analytics Platform Is a "Device."**

Defendant incorrectly contends Plaintiff's CIPA § 632 claim fails because Defendant's "code is not an 'electronic amplifying or recording device' within the meaning of Section 632." Dkt. 23 at 23. Under 632, a "device" can include Defendant's software. *See Tate v. VITAS Healthcare Corp.*, 762 F.Supp.3d 949, 957 (E.D. Cal. 2025); *Gladstone v. Amazon Web Svcs. Inc.*, 739 F.Supp.3d 846, 856-57 (W.D. Wash. 2024) (collecting cases); *see also United States v. Hutchins*, 361 F.Supp.3d 779, 795 (E.D. Wis. 2019) (majority of courts interpreting "device" under federal Wiretap Act have found it includes software).

In *Tate* and *Gladstone*, after analyzing the meaning of "device" under § 632, the courts concluded that the term includes software. *See Tate*, 762 F.Supp.3d at 957; *Gladstone*, 739 F.Supp.3d at 856-57. The courts also distinguished the meaning of "device" under CIPA § 632 from the meaning of an "electronic tracking device" under CIPA § 637.7. *See Tate*, 762 F.Supp.3d at 957-58; *Gladstone*, 739 F.Supp.3d at 857. As the court in *Tate* held, "section 637.7 is concerned with electronic tracking devices that are clearly meant to be physical and thus not a proper consideration for defining 'device' under section 632(a)." 762 F.Supp.3d at 957-58. Based on the above, Defendant's software constitutes a device under § 632.

In contending its software is not a device, Defendant incorrectly: (a) relies on a case interpreting CIPA § 637.7; and (b) incorrectly interprets the language of CIPA § 632. *See* Dkt. 23 at 23-24. The case law discussed above demonstrates the impropriety of Defendant's arguments.

**D. Plaintiff Sufficiently Alleges IEA Violations.**

In a perfunctory and undeveloped fashion, Defendant argues Plaintiff's IEA claim fails because Defendant was a party to the relevant conversations. *See id.* at 24-25. Defendant engages

in no analysis of what it means to be a party under the IEA. *See id.* Defendant has waived the argument. *See Moore*, 159 Fed. App'x at 268; *Citibank, N.A.*, 2025 WL 2370888, at *7.

Under Illinois law, an unintended recipient of a communication is not a party. *Vasil v. Kiip*, 2018 WL 1156328, at *6 (N.D. Ill. Mar. 5, 2018). Like here, in *Vasil*, a third-party surreptitiously intercepted the plaintiff's online communications. *See id.* The court rejected the contention that the third-party was a party to the communications, holding a "direct, but unintended recipient of a communication" does not automatically become a party to the communication. *See id.* The court held that an alternative result would allow a sophisticated eavesdropper to skirt the IEA. *Id.* The court further held that it was "doubtful, to say the least, that the Illinois legislature intended to reward technologically savvy privacy violators by insulating them from liability for unlawful eavesdropping simply because they managed to route the data directly to themselves rather than stealing it from an intended recipient." *Id.*

Based on *Vasil*, Defendant was not a party to Plaintiff's communications with PowerSchool. At best, Defendant was a direct—but unintended—recipient of Plaintiff's communications. Indeed, Plaintiff did not even know Defendant was eavesdropping on his communications.

The cases cited by Defendant are inapposite as they interpret a version of the IEA that is no longer in existence. *See Angelo v. Moriarty*, 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016) (interpreting pre-1994 version of IEA); *Bender v. Bd. of Fire & Police Comm'rs.*, 539 N.E.2d 234, 237 (Ill. App. Ct. 1989) (same). In all events, unlike here, in those cases, a party directly involved in the conversations at issue made the recordings. *See Angelo*, 2016 WL 640525, at *2-4; *Bender*, 539 N.E.2d at 563.

### E. Plaintiff Sufficiently Alleges Intrusion Upon Seclusion.

Defendant incorrectly contends Plaintiff's intrusion upon seclusion claim fails because: (a) the communications at issue did not contain private information; (b) Heap's conduct was not highly offensive to a reasonable person; and (c) Plaintiff did not sufficiently allege "anguish and suffering." Dkt. 23 at 25-26. To state an intrusion upon seclusion claim, a plaintiff must allege: (a) an unauthorized prying or intrusion into the plaintiff's seclusion; (b) an intrusion that is highly offensive to a reasonable person; (c) that the matter at issue is private; and (d) the defendant's conduct caused anguish and suffering. *See Zboralski v. Monahan*, 446 F.Supp.2d 879, 884 (N.D. Ill. 2006) (applying Illinois law)[7]; *see also Wiley v. Universal Music Grp.*, 2025 WL 3654085, at *3 (N.D. Cal. Dec. 17, 2025) (applying California law). Eavesdropping and wiretapping are examples of the type of conduct that forms the basis of an intrusion upon seclusion claim. *See Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989); *see also Brown v. Google LLC*, 685 F.Supp.3d 909, 941-42 (N.D. Cal. 2023). California courts have held that it is premature to determine whether conduct rises to the level of being "highly offensive" at the pleadings stage. *See Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *8 (N.D. Cal. Aug. 29, 2025) (citing cases).

Here, the Complaint contains numerous allegations regarding Defendant's surreptitious and widespread wiretapping of, and eavesdropping upon, school children's confidential, sensitive and statutorily-protected communications. Dkt. 1 ¶¶ 3, 6-7, 18-30, 37-39, 43-44, 47-71, 75, 82-86, 159, 161-63. Moreover, the Complaint alleges in detail why Plaintiff and class members had a reasonable expectation of privacy. *See id.* Additionally, given the sensitive and protected nature of

[7] In *Lawlor v. North American Corp. of Ill.*, 983 N.E.2d 414, 425 (Ill. 2012), the Illinois Supreme Court recognized intrusion upon seclusion as a tort in Illinois.

the communications, and the fact that Defendant carried out its unlawful conduct on school children, Defendant cannot credibly argue its conduct was not highly offensive to a reasonable person.

As for anguish and suffering, Plaintiff alleges he and class members sustained injuries, damages and anguish, among other suffering. Dkt. 1 ¶ 167. When Plaintiff's allegations and the reasonable inferences therefrom are viewed in the proper light, it is reasonable to conclude that Defendant caused such anguish and suffering. *See Burrow v. Sybaris Clubs Int'l, Inc.*, 2013 WL 5967333, at *3 (N.D. Ill. Nov. 8, 2013) (plaintiff sufficiently alleged anguish and suffering in case involving unlawful recording of calls).

Defendant contends "private facts" may only consist of financial, medical, sexual or intimate information, citing to *Acosta v. Scott Labor LLC*, 377 F.Supp.2d 647, 650 (N.D. Ill. 2005). Dkt. 23 at 25. However, *Acosta* merely provided "*[e]xamples* of inherently 'private facts'" – not an exhaustive list. *See* 377 F.Supp.2d at 650 (emphasis added).

Defendant's contention that its conduct was a "routine commercial practice" and not highly offensive (Dkt. 23 at 25) is untethered to Plaintiff's allegations and Defendant's conduct. As discussed above, when viewed in the proper light, Plaintiff's allegations describe highly offensive conduct.

The cases relied on by Defendant (*id.* at 25-26) are distinguishable because they did not involve the continuous and individualized interception of students' legally-protected school records. Notably, the court *In re Google, Inc. Priv. Policy Litig.*, 58 F.Supp.3d 968, 987 (N.D. Cal. 2014), found that eavesdropping on workplace conversations was an example of intrusion upon seclusion. The conduct at issue here is far more egregious and offensive.

## III. The Court Should Not Stay This Action Under the First-Filed Rule.

After successfully fighting for dismissal from the *Q.J. Action* on personal jurisdiction grounds, Defendant now seeks to stay this action pending a decision on class certification in the *Q.J. Action*. Dkt. 23 at 26-33. The law, facts and equities do not support Defendant's position.

### A. Legal Standards.

The first-filed rule seeks to avoid duplicative litigation and honor the plaintiff's choice of forum which aids judicial administration and conserves resources. *See Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 539 (S.D.N.Y. 2013). The rule provides a presumption that if there are two competing actions, the first-filed suit should have priority. *See id.* In the context of class actions, there must be identical or substantially similar parties and claims for the first-filed rule to apply. *Id.* at 539.

The first consideration in determining the applicability of the first-filed rule is whether the actions at issue are, in fact, duplicative. *See id.* In making that determination, courts should not apply the first-filed rule's presumption in a mechanical or rigid way. *Id.*; *see also Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y. 1977), *cited with approval in Employers Ins. of Wasau v. Fox Ent't Grp., Inc.* ("*Wasau*"), 522 F.3d 271, 275 (2d Cir. 2008). Rather, in exercising its discretion to stay a later-filed case, a court must consider the equities of the situation. *Quinn*, 958 F.Supp.2d at 539.

Even where there are competing actions, a court need not apply the first-filed rule if: (a) the balance of convenience favors the second action; or (b) special circumstances exist that justify giving priority to the second action. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). In analyzing the "balance of convenience," courts look to the factors applicable to motions to transfer venue pursuant to 28 U.S.C. § 1404(a). *Wasau*, 522 F.3d at 275. Those factors include:

(a) the convenience of witnesses; (b) the convenience of the parties; (c) the location of relevant documents and the relative ease of accessing documents; (d) the locus of operative facts; (e) the availability of process to compel the attendance of unwilling witnesses; (f) the relative means of the parties; (g) the forum's familiarity with the governing law; (h) the plaintiff's choice of forum; and (i) trial efficiency and the interests of justice. *Albright v. Terraform Labs, Pte. Ltd.*, 641 F.Supp.3d 48, 55 (S.D.N.Y. 2022).

Where "considerations of judicial economy militate in favor of the [second] forum," such as where no personal jurisdiction issues exist in the forum of the second-filed action but do exist in the first-filed forum, a court need not apply the first-filed rule. *See Schneider*, 435 F.Supp. at 748. Indeed, where personal jurisdiction is an issue, "considerations of judicial economy require the case to be litigated first in [the forum without personal jurisdiction issues]." *Id.* at 750. Absent such a requirement, if a district court improperly determines that it has personal jurisdiction and that determination is "later overruled on appeal, *much time and energy would have been wasted by the parties and the court.*" *Id.* (emphasis added).

### B. There Are No Competing Actions.

Defendant's motion to stay fails at the outset because there are no competing actions that trigger the first-filed rule. On August 20, 2025, the court in the *Q.J. Action* dismissed Defendant based on a lack of personal jurisdiction. *Q.J.*, 2025 WL 2410472, at *5. While the plaintiff sought reconsideration of that ruling in September 2025 (*Q.J. Action* Dkt. 183), the court has not yet ruled on that motion. *See, generally, Q.J. Action* Docket. Thus, Heap has not been a defendant in the *Q.J. Action* since August 2025, while discovery has proceeded as to the other defendants. Declaration of Scott R. Drury ("Drury Decl.") ¶ 4.

The fact that Heap has been dismissed from the *Q.J. Action* distinguishes this case from those relied on by Defendant (*see* Dkt. 23 at 29-30) where multiple actions were actively pending against a defendant in the same or different districts. Unlike the cases relied on by Defendant, here, Plaintiff cannot obtain relief against Defendant in the *Q.J. Action.* Relatedly, any class certification determination in the *Q.J. Action* will not apply to Defendant. Because the *Q.J. Action* does not offer Plaintiff and class members in this case the ability to obtain relief against Defendant, the *Q.J. Action* is not competing with this action. Thus, the first-filed rule does not apply.

The conclusion is the same when considering the equities. Defendant successfully obtained dismissal from the *Q.J. Action* for jurisdictional reasons and now seeks to prevent litigation from moving forward here—its home forum. Again, unlike the cases it relies on, rather than merely seeking to litigate the claims against it in another forum, Defendant seeks to halt all litigation commenced against it.

Further, as the Court previously found in the context of Defendant's motion to stay discovery, plaintiff will likely be prejudiced by the discovery stay that will go along with a stay of this case given: (a) that Defendant was sued in the *Q.J. Action* in 2023 and, as more time passes, the higher the risk will be that witnesses' memories will fade or witnesses will become unavailable; (b) the lack of merits discovery obtained against Defendant in the *Q.J. Action*; and (c) that Defendant's recent acquisition could impact Defendant's retention of relevant employees. Exhibit 1 to Drury Decl. at 18:2-22.

In contending this case competes with the *Q.J. Action*, Defendant overlooks its dismissal from the *Q.J. Action*, and the fact that if a stay is granted, Defendant will not have to defend against the claims at issue in any forum. *See* Dkt. 23 at 28-30. Again, this is far different from cases where a defendant is actively litigating in two forums.

Defendant seemingly attempts to offset the prejudice that will be caused by its requested stay by offering to provide status reports every ninety days. Dkt. 23 at 33. Any such status reports will not change the fact that there are no competing actions justifying application of the first-filed rule. Moreover, those status reports will not cure the prejudice a stay will inflict on Plaintiff.

### C. Only This Court Can Definitively Exercise Jurisdiction Over Defendant.

Even if there were competing actions, the Court should not apply the first-filed rule here given the special circumstance that only this Court can definitively exercise personal jurisdiction over Defendant. *See Schneider*, 435 F.Supp. at 750. Indeed, the court in the *Q.J. Action* has already written an extensive opinion setting forth the reasons it lacks personal jurisdiction over Defendant. *Q.J.*, 2025 WL 2410472, at *2-5. By contrast, Defendant has conceded this Court has jurisdiction over it. *See* Dkt. 25 at 2; Exhibit 1 to Drury Decl. at 5:20-23. Given these circumstances, the proper result is to move forward in this forum where no jurisdictional issues exist. *See Schneider*, 435 F.Supp. at 750.

### D. The Balance of Convenience Favors This Action.

The Court may also disregard the first-filed rule in this case because the balance of convenience favors this forum. Defendant cannot credibly contend otherwise given that it successfully argued that the Northern District of Illinois cannot exercise jurisdiction over it. Indeed, in its motion, Defendant merely states that the relevant "balance of convenience" factors "do not weigh in favor of allowing the second-filed action to proceed" without explaining where it believes the case can proceed. *See* Dkt. 23 at 31. Between the Northern District of Illinois and this District, this is the only forum where this case can proceed.

An analysis of the balance of convenience factors results in the same conclusion:

***Convenience of the Witnesses***: This factor weighs in favor of this forum or is neutral. Defendant fails to "clearly specify the key witnesses to be called" or "make a general statement of what their testimony will cover." *Factors Etc., Inc.*, 579 F.2d at 218. Thus, Defendant has not demonstrated that another forum in more convenient than this one. Given that Defendant is headquartered in New York, it is likely that key witnesses are located here. Indeed, during jurisdictional discovery in the *Q.J. Action*, Heap's Senior Director of Product Management testified at a deposition regarding the functionality of Heap's data analytics platform. Drury Decl. ¶ 5. The witness resided in Brooklyn, New York. *Id.*

***Convenience of the Parties***: This factor weighs in favor of this forum because Defendant is headquartered here. Given that Plaintiff has chosen this forum, he does not claim inconvenience.

***Location of Relevant Documents***: This factor is neutral given that, in modern times, discovery is largely electronic.

***Locus of Operative Facts***: This factor is neutral because the case arises out of the interception of electronic data transferred to and stored in servers. The case does not revolve around a brick-and-mortar location or tangible object.

***Availability of Process to Compel Unwilling Witnesses***: This factor is neutral because it is not known where all witnesses are located.

***Relative Means of the Parties***: Given that Plaintiff has chosen to litigate in Defendant's home forum, this factor is neutral.

***Forum's Familiarity with Governing Law***: This factor is neutral or slightly weighs in favor of this forum because the case involves federal and state law, and the Illinois federal court does not have jurisdiction over Defendant.

***Plaintiff's Choice of Forum***: This factor weighs in favor of this District. Plaintiff filed in this forum after the court in the *Q.J. Action* found it could not exercise personal jurisdiction over Defendant. By filing here, Plaintiff has avoided further jurisdictional litigation. Contrary to Defendant's contention (Dkt. 23 at 31), forum shopping played no role in Plaintiff's decision.

***Trial Efficiency and the Interests of Justice***: This is perhaps the most important factor, *see Albright*, 641 F.Supp.3d at 56, and strongly weighs in favor of this forum. As discussed throughout, of the two options, this is the only forum where Defendant can be held accountable. Staying this case will only result in this case languishing to the detriment of Plaintiff and class members.

## CONCLUSION

For the foregoing reasons, the Court should deny: (a) Defendant's motion to dismiss in its entirety; and (b) Defendant's alternative request for a stay. To the extent the Court grants any portion of Defendant's motion to dismiss, Plaintiff respectfully requests that the Court grant him leave to file an amended complaint.

Dated: January 7, 2026

Respectfully submitted,

I.J., on behalf of himself and
others similarly situated,

By: /s/ Scott R. Drury

SCOTT R. DRURY (*admitted pro hac vice*)
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
(312) 358-8225
Email: scott@drurylegal.com

JOSHUA D. ARISOHN
**ARISOHN LLC**
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Counsel for Plaintiff and putative class members*

**CERTIFICATION AS TO WORD COUNT**

I hereby certify that this document was prepared on a computer using Microsoft Word using a proportionally-spaced typeface as follows:

| | |
|---|---|
| Name of Typeface: | Times New Roman |
| Point Size: | 12 point (body of document) |
| Line Spacing: | 2 |

The total number of words in this document, excluding the caption and signature block, and any Table of Contents or Table of Authorities, as calculated by the word processing program used to prepare this document is: 8,733.

Dated: January 7, 2026

/s/ Scott R. Drury
SCOTT R. DRURY

**CERTIFICATE OF SERVICE**

I, Scott R. Drury, an attorney, hereby certify that, on January 7, 2026, I filed the foregoing document using the Court's CM/ECF system, which effected service on all counsel of record.

*/s/ Scott R. Drury*
Scott R. Drury